74 So.2d 599

## NORTH RIVER INSURANCE CO.

v.

## James M. McKENZIE et al.

### 6 Div. 663.

Supreme Court of Alabama.

Aug. 30, 1954.

Marvin Williams, Jr., Davies & Williams, Birmingham, for appellant.

Ray & Giles, Birmingham, for appellees.

LIVINGSTON, Chief Justice.

The original bill of complaint in this cause was filed by appellant, North River Insurance Company, against James M. McKenzie, Carrie McKenzie and the Bank for Savings and Trust, a corporation, in the Circuit Court of Jefferson County, Alabama, in Equity.

The bill of complaint alleged, in part, the following: Complainant, prior to May 26, 1945, issued a policy of insurance on a dwelling house owned by respondents, James M. McKenzie and Carrie McKenzie, insuring said building against loss or damage by aircraft in the amount of $2,150. On May 26, 1945, the insured building was damaged by aircraft operated by an agent of the United States Government. Thereafter, on May 11, 1948, complainant paid, advanced, or loaned to respondents, McKenzies, the sum of $2,537, being the full amount of said policy with interest thereon from the date of the accident. The McKenzies, at that time, executed to complainant an instrument called a loan receipt.

Prior to the execution of said loan receipt, both James M. McKenzie and Carrie McKenzie had instituted actions in the United States District Court against the United States Government for damages caused to them by the latter's aircraft. James M. McKenzie's suit, which alleged $7,500 damages to the insured dwelling house alone, was settled for $5,982.15 shortly after complainant insurance company and the McKenzies executed the loan receipt. The original bill further averred that a part of the $5,982.15 recovered from the United States Government was deposited in respondent bank, and that a part thereof was used by respondents, McKenzies, to purchase certain real estate situated in Jefferson County, Alabama. Also, the original bill averred that the McKenzies had become trustees as to complainant for

all sums received as damages to the insured building up to the amount of $2,537, and that complainant was entitled to trace said trust funds into the hands of respondent bank and into said real property.

By amendment, complainant attached a copy of the loan receipt to the original bill. Demurrers were filed to the complaint, as amended, and were sustained by the court. Complainant then again amended the bill to aver that the net recovery by respondents, McKenzies, from the United States Government for loss and damage by aircraft to the insured building amounted to $5,982.15. After the latter amendment, demurrer to the complaint was overruled. An appeal from said decree on demurrer was taken by respondents, McKenzies. This court reversed and remanded, allowing complainant thirty days within which to amend. Our decision on said first appeal, 257 Ala. 265, 58 So.2d 581, was based upon insufficient allegations within the complaint, in that it failed to allege any consideration for the loan receipt.

Complainant then amended its bill of complaint, and set out the express provisions of the insurance policy with reference to subrogation, which provide that the "company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company." The bill, as amended, further averred that if for any reason the loan receipt be held invalid and ineffective, then the payment of $2,537 by the insurer would entitle complainant to be subrogated to the rights of respondents, McKenzies, against the United States Government.

Complainant further amended the bill by alleging that respondents, McKenzies, shortly after the loss, advised complainant insurance company that they (the insured) would attempt to collect their entire damages from the United States Government, and that they (the insured) requested that their claim against complainant be allowed to remain in abeyance until the McKenzies could attempt to collect from the alleged tort-feasor. Thereafter, the McKenzies, as previously stated, filed suits against the United States Government. Said suits were prosecuted under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. The amended complaint further alleged that while the said federal suits were pending, the McKenzies requested that complainant pay or advance to them the amount of the insurance policy. Complainant thereupon payed or advanced the face amount of the policy, plus interest thereon from the date of the loss to the date of payment. The McKenzies at that time executed the loan receipt.

Furthermore, the amended bill set out certain correspondence between attorney for complainant and attorney for the insured (McKenzies). The effect of said correspondence is that the attorney for the insured advised the McKenzies of the insurance company's right of subrogation, that the two attorneys agreed that the suits were properly prosecuted against the United States Government in the name of the McKenzies, and that the attorney for the insurance company would not intervene in the pending suits on behalf of said company. Also, the attorney for the insured stated that he would deem it his duty to advise the insurer's attorney of any plans prior to any final action being taken in the United States District Court. In addition, the bill, as amended, averred that despite said correspondence a settlement was made by respondents, McKenzies, with the United States Government, without any notice of knowledge of the settlement having been rendered to complainant until after said settlement had been effected. Said bill alleged that complainant did not intervene in the federal suits until after the settlement inasmuch as it had relied on the promises and assurances made by attorney for the insured. By virtue of the above allegations, complainant claimed that respondents, McKenzies, were estopped to assert that the loan receipt was invalid or to contest complainant's right to subrogation by reason of its payment under the policy.

Demurrer to the complaint, as amended, again was filed by respondents, McKenzies, and sustained by the trial court. Thereafter, complainant further amended the bill by averring that the total amount re-

covered by the McKenzies for loss of insured property, after allowing all reasonable costs and expenses for recovering such sum, including the amount paid by complainant to said respondents, was in excess of the value of the insured property. Demurrer to the bill, as last amended, was overruled.

Answer of respondents, McKenzies, denies that the funds received from the United States Government are trust funds, or that complainant has the right to trace said funds. Said answer further denies that the amount recovered by the McKenzies from the government for damage to the insured dwelling, plus the $2,537 paid by complainant, is in excess of the value of the insured property.

Testimony was taken ore tenus before the trial court. After submission, the lower court rendered its final decree, finding in favor of the respondents, the appellees. Complainant, appellant, has prosecuted this appeal from such final decree on the merits of the cause, no application for rehearing or motion for new trial having been filed below.

Four main issues are presented upon this appeal: (1) Did $2,537 of the sum recovered by James M. McKenzie from the federal government, in the settlement heretofore mentioned, constitute a trust fund for the benefit of appellant insurance company? (2) Under the circumstances which prevailed at the time of the settlement, are the McKenzies now estopped from claiming that the burden was upon the insurer to intervene in the federal suit in order to have protected any rights it might have had therein? (3) Is the insurer entitled to be subrogated to the extent of its payment ($2,537) from the sum of $5,982.15, which James M. McKenzie recovered from the federal government by way of settlement? (4) Did the trial court err in sustaining the demurrer of respondents, McKenzies, to the bill of complaint, as amended, the decree sustaining said demurrer bearing date of October 9, 1952, and having the effect of requiring complainant to aver and prove that the total amount recovered by the McKenzies for the loss of the insured dwelling, after allowing all reasonable costs and expense for recovering said sum, including the amount paid by complainant, was in excess of the value of the insured property?

We are of the opinion that each of the stated issues must be answered in the affirmative.

Hayward v. State Farm Mut. Automobile Ins. Co., 212 Minn. 500, 4 N.W.2d 316, 318, 140 A.L.R. 1236, is much in point here. There, in a suit for damages to his person and his automobile, Hayward recovered a verdict of $7,401.93 against the tort-feasor. Prior to Hayward's suit against the tort-feasor, the Home Insurance Company of New York had paid Hayward $550, representing the damage to his automobile under a policy of collision insurance carried by Hayward, and the insurance company had taken a subrogation receipt and assignment from Hayward. State Farm Mutual Automobile Insurance Company, the tort-feasor's insurer, paid the judgment except for the $550 which the Home Insurance Company had claimed under its right of subrogation. Thereupon, Hayward sued both companies for the $550. State Farm Mutual paid the money into court and was dismissed from the suit. The question presented was whether or not the Home Company, as subrogee, could assert a right to the money paid into court.

The Supreme Court of Minnesota approached the problem by first stating that Hayward had but one indivisible cause of action against the tort-feasor. The opinion states that Hayward subrogated a part of his cause to the Home Insurance Company when he collected his collision insurance, and "this was true whether or not he signed a subrogation receipt knowing what it was. Subrogation is 'not dependent upon contract, privity, or strict suretyship.'" The court then emphasized that the only means which the Home Company had of recovery on its subrogated right was to have its claim included in plaintiff's cause of action against the wrongdoer. In conclusion, that opinion states as follows:

"Had the plaintiff here recovered from Vollbrecht on the damage to his car before he sought to collect on his

collision insurance from the Home Company, he could not have recovered the collision insurance. * * * One reason is that he would have thereby deprived the insurance company of its right of subrogation. Another is that he would thereby be getting double damages for the same loss. That is just what has happened here. There was substantial evidence of damage to the car before the jury, it was included in the pleading, and it was covered in the court's charge to the jury. Therefore, it is included in the verdict. True, there is no way of telling just what the jury actually allowed plaintiff for damage to the car, but whatever there was would, under the doctrine of subrogation, be held in trust by plaintiff for the insurance company. The record shows that the Home Company asked plaintiff's lawyers to look after its interests, but it received no reply. It is silent as to any notice given to the company of the approaching trial of the main action or of any request by plaintiff that it participate in the trial. The complaint showed definitely that recovery was sought for $650 damage to the car, which exceeded the amount to which the company was subrogated. The company was fully justified in believing that competent counsel would try the case according to the pleadings and that, since plaintiff had in his pleading assumed the obligation of recovering the damages upon which the law impressed a trust in favor of the company, he would offer competent proof and ask for a special finding if he desired one. As trustee, we conceive it to have been his duty to do so. For strategic reasons, plaintiff's counsel probably wanted no insurance company apparent on their side of the case. At any rate, plaintiff brought the suit the only way in which the total damage to the car could be recovered, that is, by including it in his action. The burden was then on him to protect the interest of his cestui que trust. If he desired assistance in protecting that interest he should have demanded it. As a trus-

tee, if he wanted to know how much the jury would include in its verdict for damage to the car, he should have asked for a special finding. It was he who was to hold the recovery for such damage in trust for the insurance company. He, not his cestui que trust, had the management of the case. Not having asked for the finding, the only inference is that he was satisfied to take the amount he had received as a basis for computing what he would hold in trust for the company. No other rule would be just. In neither Hamilton Fire Ins. Co. v. Greger, 246 N.Y. 162, 158 N.E. 60, 55 A.L.R. 921, nor Costello v. New York C. & H. R. R. Co., 238 N.Y. 240, 144 N.E. 514, cited by respondent, was our view of splitting a cause taken nor was the trustee relation given consideration."

Similar reasoning is applicable to the instant case.

Illinois Automobile Ins. Exch. v. Braun, 280 Pa. 550, 124 A. 691, 692, 36 A.L.R. 1262, also is very much in point with the case before us, particularly in respect to issues (3) and (4). There, as in the present controversy, the insurer had sued the insured in order to recover a sum it had paid the latter under one of its policies. An action by the insured against the alleged tort-feasor, subsequent to payment by the insurer comprehended not only a claim for damage to a truck, the only item insured, but in addition, claimed damages for the destruction of its contents, which the policy did not cover. Although the Exchange knew said action was pending, it was not aware of any negotiations for settlement between the insured and the wrongdoer. Prior to trial and without notice of or the acquiescence of the Exchange, the action was settled for $750. The insured received that sum, and a verdict was rendered by agreement in favor of the tortfeasor. Upon learning of the outcome of this litigation, the insurer brought action against the insured to recover the amount paid on the policy. The insured contended that there was no right of subrogation inasmuch as the property covered by the policy and that represented in the suit against

the wrongdoer was not the same. Like argument is presented by James M. and Carrie McKenzie upon this appeal.

The Pennsylvania court, however, dismissed said contention in the following manner:

"* * * We are not impressed with this argument, first, for the reason that, when appellants received the Exchange's money, they recognized its right to be subrogated to the amount paid, by a paper signed by their attorney, * * *, and, secondly, because when they settled with the railroad company, no separation of the items of damage was made and therefore the part of the gross sum representing loss on the truck could not be ascertained. Appellants could not be permitted to jeopard appellee's position by mixing up the claims and make a lump settlement and then set up this as a reason against appellee's recovery from them."

We are impressed that the foregoing reasoning is sound, and are convinced that its equity should be applied to the controversy now before us.

Illinois Automobile Ins. Exch. v. Braun, supra, also concerned another issue of paramount import to the determination of the instant case. Stated briefly: What amount is the insurer entitled to recover? Again, we refer to the opinion of the Supreme Court of Pennsylvania:

"* * * The court below held it was entitled to receive the entire amount it had paid to appellants without deduction of any kind. This we think was correct. Appellants argue that the only sum which appellee is entitled to recover from them is such amount as has been received by them from the insurer and the wrongdoer in excess of the amount of their loss after allowing them the expenses of litigation, * * * and they set up that their loss was greater than the sum received by them from both sources. While it is true the amount claimed from the railroad company was greater than the total they received from both, they did not test out what their full loss was by pressing the suit against the railroad company to verdict, and therefore cannot avail themselves of the principle they seek to invoke. The clause in the policy expressly provides that the insurer is to be subrogated to the amount of its payment under the policy; this provision fixes the sum to which it is entitled even though the insured had suffered a loss over and above that which was covered by the insurance. * * * It would never do in administering such an equitable doctrine as subrogation to permit the insured to defeat recovery of any sum from him by his insurer merely by making claim as to his total loss without having his loss ascertained."

Assignment of Error No. 1 states that the trial court erred in sustaining the demurrer of respondents, James M. and Carrie McKenzie, to the bill of complaint, as amended, the decree sustaining said demurrer being dated October 9, 1952. As previously mentioned, the effect of such action by the lower court was to require the complainant insurance company to aver and prove that the total amount recovered by the insured for the loss of the insured property, after allowing for all reasonable costs and expense for recovering said sum, including the amount paid by complainant to the insured, was in excess of the value of the insured property. We are of the opinion and hold that said ruling on demurrer by the trial court was error to reverse.

■ A contract of insurance is merely a contract of indemnity, and from its nature, the insurer, after paying to the insured the amount of a loss on a policy, is entitled to be subrogated in a like amount to the insured's right of action against the wrongdoer.

Though we are aware of no Alabama case which refers to each of the issues presented, as does Hayward v. State Farm Mut. Automobile Ins. Co., supra, Collins, Individually and for the use of the Pa. Fire Ins. Co., v. Mobile & O. R. Co., 210

Ala. 234, 97 So. 631, 633, contains language very much in point with issues (3) and (4). There, this court stated:

"* * * it is well to note plaintiff's request in writing for the following charge, which was refused:

"'The court charges the jury that when the Pennsylvania Fire Insurance Company paid said Collins the $3,500 insurance, it immediately became entitled to the first $3,500 of any claim or demand he had, if any, against the defendant, arising out of the destruction of the insured property, and any settlement made between said Collins and defendant thereafter would not prevent plaintiff from recovering herein if he was otherwise entitled to recover.'"

The charge assumed the undisputed fact that the insurance company had paid Collins the $3,500, and that when so paid, the company became entitled to such amount of Collins' claim against the wrongdoer. With reference to said assumption, this court then stated:

"* * * This was true as a matter of law and under the subrogation agreement and assignment in evidence. If the liability of defendant had been merely $3,500, the insurance company would have been entitled to all of it, and, if less than that amount, to such sum. If there was liability on the part of the defendant company other than the $3,500 paid by the insurance company, the former company, knowing of the insurance and of such adjustment and settlement, was primarily liable to the insurance company on the subrogated contract. The charge merely sought to instruct the jury that any settlement made by Collins with the railroad company without the assent and concurrence of the insurance company would not prevent Collins (for the use of the Pennsylvania Fire Insurance Company) from recovering in a suit in its behalf, if otherwise entitled to recover. This was a proper explanatory charge in view of the evidence that, after the payment to the insured of the amount of the insurance and the assignment of his claim for such amount to the insurance company, the former made settlement with the railroad company of his claim.

* * * * * *

"A statutory provision (Code, § 5159) is that claims against railroad companies for injury to property may be assigned in writing, and each successive assignee thereof may sue thereon in his own name. Parnell v. Southern Ry. Co., 199 Ala. 470, 74 So. 437. When the settlement was made by defendant with Collins for his damages, it was with a knowledge of the foregoing statute, the existence of the insurance, and that an adjustment of the insurance was being made. Under such circumstances, given in evidence, the charge should have been given at plaintiff's request."

Furthermore, Collins, Individually and for the use of the Pa. Fire Ins. Co., v. Mobile & O. R. Co., supra, states that under such circumstances "the insurer and insured are considered as one person," as does Wyker v. Texas Co., 201 Ala. 585, 79 So. 7, L.R.A.1918F, 142. The reasoning of the Alabama courts seems to be in accord with the language of Hayward v. State Farm Mut. Automobile Ins. Co., supra, which holds that "by no act of either the insurer or the insured could the wrongdoer be subjected to two actions on one cause." The Alabama and Minnesota view—that the present controversy could not have been made into a split cause of action—is followed in the majority of jurisdictions. See Van Wie v. United States, D.C., 77 F. Supp. 22.

The reasoning exhibited in Hayward v. State Farm Mut. Automobile Ins. Co., supra, concerning the insurer's rights, after payment of insurance, in the proceeds of a suit by the insured against the tort-feasor, is evidently the prevailing view. See 29 Am.Jur., § 1348, Supp. There, the following is stated:

"The cases involving the question of the right of an insurance company which has paid a claim for property damage * * * to share, under principles of subrogation, in the proceeds of a recovery against or settle-

ment with the tort-feasor in favor of the insured are unanimous in upholding the right of the insurer so to share. These cases exhibit a strong tendency to hold that the burden of showing that the amount received by the insured represented * * * the element of the cause of action with respect to which the insurer enjoys no right of subrogation, and not * * * the element with respect to which the insurer may be subrogated, rests upon the insured, and that, in the absence of proof so showing, the recovery will be presumed to include the full amount of property damage and the insurer must be permitted to recover the full amount paid by it under the policy (assuming, of course, that the proof indicates that the property damage exceeded the amount paid by the insurer under the policy), less any expenses incurred by the insured in securing the recovery against the wrongdoer."

A few cases do contain language contrary to this opinion. Practically every one of these cases, however, at one point or another, relies upon either Shawnee Fire Ins. Co. v. Cosgrove, 86 Kan. 374, 121 P. 488, or Shawnee Fire Ins. Co. v. Cosgrove, 85 Kan. 296, 116 P. 819, 820, 41 L.R.A., N.S., 719. At 116 P. 820, the Kansas court states:

"If, as in this case, the insurer is notified that the insured does not wish to solely represent the insurer, then it is the duty of the insurer to protect his own rights, especially when he had notice that a settlement was talked of."

Clearly, the Kansas opinions were based upon the insured having first notified the insurer that he (the insured) did not wish to solely represent the case at bar. Here, the insurer not only desired to intervene, but offered to do so, to aid in the prosecution of the suit against the wrongdoer, and to pay its share of the expenses incurred therein. In the present controversy, the insurer did not press its right of intervention; instead, it relied upon the good faith of the insured. We think the two cases to be clearly distinguishable. Both of the

Kansas opinions were obviously based upon a good faith settlement having been made by the insured with the tort-feasor, after the insured had requested the insurance company to protect his own rights. The language of said cases, therefore, in regard to the burden of intervention, is not applicable to the present controversy.

See, also, Hamilton Fire Ins. Co. v. Greger, 246 N.Y. 162, 158 N.E. 60, 55 A.L.R. 921; Sun Ins. Office v. Hohenstein, 128 Misc. 870, 220 N.Y.S. 386; Washtenaw Mut. Fire Ins. Co. v. Budd, 208 Mich. 483, 175 N.W. 231. The latter cases, admittedly contra to this decision, fail to present the prevailing view, as set forth in 140 A.L.R. 1246.

 In our opinion, the equitable reasoning of Hayward v. State Farm Mut. Automobile Ins. Co., supra, and Illinois Automobile Ins. Exch. v. Braun, supra, should be followed in this state.

Assignment of Error No. 1 is well taken. Thus, the decree of the trial court must be, and is, hereby reversed.

Reversed and remanded.

SIMPSON, GOODWYN, and CLAYTON, JJ., concur.