243 So.2d 717

**SOUTHERN GUARANTY INSURANCE COMPANY, a Corporation**

**v.**

**James T. RHODES.**

**I Div. 31.**

Court of Civil Appeals of Alabama.

Feb. 3, 1971.

**456**

Collins, Galloway & Murphy and James H. Lackey, Mobile, for appellant.

Cunningham, Bounds & Byrd and Warren L. Hammond, Jr., Mobile, for appellee.

WRIGHT, Judge.

This is an appeal from verdict and judgment for plaintiff-appellee against appellant Southern Guaranty Insurance Company. Suit was brought below in a one count complaint for breach of an oral contract of insurance. Appellant filed eight pleas to the complaint. Demurrer was sustained to all pleas except 6 and 7. The substance of the pleas is that at the time of the accident there was in effect between the parties a written contract of insurance covering the vehicle of plaintiff, and that there was contained in the written policy a driver exclusion as to the driver of the vehicle at the time of the accident.

The evidence was that in July, 1967, appellant issued a policy of insurance to appellee through its general agent. It was a liability policy covering two automobiles. In August, 1967, there was an amendment to the policy which removed coverage as to one of the automobiles and excluded from coverage any automobile while being operated by the insured's son, James L. Rhodes. This amendment and exclusion was accepted by appellee and acknowledged by his signature to the amendment. The policy was renewed January 15, 1968.

On or about May 10, 1968, the insured purchased a 1968 Pontiac automobile for his son. His testimony was that he immediately went to appellant's agent and informed him of the purchase. He further told him that there was a loan on the car at the bank and that he wanted a policy of

insurance on the car with both liability and collision coverage. When told by the agent that premiums on such a policy for his son's automobile would be high, he stated that he wanted such coverage no matter what the cost.

Appellee then testified that the agent told him that he and the son were covered as of that time.

The agent's testimony was in conflict and was to the effect that he could get him coverage in a sub-standard company at an extremely high premium of some $796.00 per year; that appellee stated he couldn't afford it at that time but would contact him later; that he wanted the Pontiac added to his present policy with collision coverage added thereon.

The agent, by amendment or endorsement, added the Pontiac to the original policy, with collision coverage added and sent a copy thereof with an additional premium charge of $26.00 to appellee. The additional premium was paid by appellee's wife.

On June 20, 1968, the Pontiac was involved in an accident while being driven by appellee's son, James L. Rhodes. The agent was notified of the accident. Investigation was subsequently made by appellant's adjuster and appellant denied coverage under its policy on the basis of the amendment of August, 1967, excluding James L. Rhodes as an insured operator.

The case was tried by the insured-appellee on the theory of an oral contract of insurance entered into between himself and appellant's general agent, whereby the Pontiac was insured while being driven by his son, James L. Rhodes.

The theory of the appellant was that there was no such oral contract, and the written contract was conclusive of all prior oral negotiations between the parties, such negotiations being integrated or merged into the written policy through the subsequent amendment, which was accepted and paid for by appellee. Since the amendment to the original policy excluded from coverage James L. Rhodes as a driver, appellant contends that the exclusion remained in effect and applied to the subsequent amendment which added to the policy liability and collision coverage on the Pontiac.

As we view the assignments of error, and as conceded by appellant in brief, the primary question presented for our consideration is whether the trial court erred in refusing to give to the jury the affirmative charge with hypothesis as requested by appellant. Whether appellant was entitled to have such charge given necessarily depends upon proof of his pleas 6 and 7. Since such pleas are in form and legal effect identical, we set out hereafter only plea 6.

"6. Defendants aver that on, to-wit, June 20, 1968, there was existing between the Plaintiff and the Defendant Southern Guaranty Insurance Company, a corporation, a policy of automobile insurance, which said policy of automobile insurance covered the Plaintiff's 1968 Pontiac Tempest automobile, said automobile having been added by amendment to the said policy of insurance on May 14, 1968, and which said policy of insurance was a written contract, being policy No. ACF 203 450, and the said policy of insurance contained the following exclusion:

'It is agreed that the insurance afforded by this policy shall not apply with respect to any claim arising from accidents which occur while any automobile is being operated or manually driven by the person named as excluded operator in section C on reverse side hereof.'

"And defendants aver that the name listed under section C was James L. Rhodes, who was driving the Plaintiff's 1968 Pontiac Tempest automobile at the time of the alleged accident, wherefore the Plaintiff aught not recover."

■ We begin our discussion with the statement of the established rule that a

valid contract to insure or of insurance can be effected by parol. Hartford Fire Ins. Co. v. Shapiro, 270 Ala. 149, 117 So.2d 348. This rule is followed in this state in spite of the provisions of Title 28, Section 75, Code of Alabama 1940. Sun Ins. Office of London v. Mitchell, 186 Ala. 420, 65 So. 143.

It is further the law in this state that a contract of insurance is essentially like all other contracts, and governed by general rules of contract. North River Ins. Co. v. McKenzie, 261 Ala. 353, 74 So. 2d 599, 51 A.L.R.2d 687; Hartford Fire Ins. Co. v. Shapiro, supra.

It is accepted by both appellant and appellee that it is the general rule that where a written contract exists between two parties, parol evidence cannot be received to explain, contradict, vary, add to, or subtract from its terms. Hartford Fire Ins. Co. v. Shapiro, supra. It is further conceded by appellee that this rule as applied in insurance cases, is that all parol negotiations, understandings and agreements are merged into the resulting written policy. Hartford Fire Ins. Co. v. Shapiro, supra.

Though there was no objection made by appellant to the introduction of evidence concerning the existence and provisions of an alleged oral contract of insurance, and thus no basis for consideration of the admissibility of such evidence under the parol evidence rule is presented in this appeal, the same basic question is presented by appellant's plea 6, and the written request for the affirmative charge. The basic question we refer to is whether there was, as a matter of law, an oral agreement, valid at the time of the loss complained of, which the jury could consider in arriving at its verdict.

The trial court would have had to determine the answer to this question early in the trial had the parol evidence rule been invoked by the appellant in the form of objection to admission of evidence pertaining to an oral contract, or in the form of a motion to exclude such evidence. Such was the manner in which it was initially raised in the case of Hartford Fire Ins. Co. v. Shapiro, supra. However, the same question may as well be raised after pleading the existence of a subsequent written contract, as was done here by appellant's plea 6; the proof of such plea after issue is joined; and the written request for the affirmative charge.

The Supreme Court of Alabama, in Hartford Fire Ins. Co. v. Shapiro, supra, makes clear what we have attempted to state here. In that case there was first presented on appeal the proposition of whether the trial court erred in overruling a motion to exclude evidence presented as to an oral contract of insurance after a subsequent written contract had been introduced. There was also assigned as error the refusal of a written request for the affirmative charge and the denial of a motion for new trial. The Court said as follows:

"These rulings raise the question of whether there was, as a matter of law, an oral agreement, valid at the time of the loss complained of, which the jury could consider in arriving at their verdict. The same questions are raised by appellant's written request for the general charge and by its timely motion for a new trial, which the trial court overruled * * *"

We think it clear from our review of the evidence there was no dispute, that as of the time of the loss complained of by appellee, there was a written policy of insurance between appellant and appellee, and that such policy was issued to appellee subsequent to the date of the alleged oral contract.

Upon presentation of the written request for the affirmative charge, the trial court was presented with the necessity of determining, as a matter of law, whether there existed for consideration of the jury an oral contract of insurance between appel-

lant and appellee so collateral, separate and distinct from the written policy as to fall without the parol evidence rule. The trial court's determination, as exemplified by its adverse ruling to appellant, is now for our review as to its correctness.

That there is a so-called exception to the parol evidence rule is recognized in this state. We admit the use of the term "so-called" is of our own origin. The exception as expressed by our Supreme Court in the Hartford Fire Insurance case is positive. The exception there stated appears to be that if there is an oral agreement, collateral, separate and distinct from the written agreement, the parol evidence rule does not apply.

Our problem is that we cannot see the stated rule as being an exception to or involved with the parol evidence rule. Wigmore on Evidence, 3rd Add. Vol. 9, Secs. 2400–2482, discusses at length the origin, meaning and effect of the parol evidence rule. In Section 2400(1) Dean Wigmore says as follows:

"* * * The rule is in no sense a rule of evidence, but a rule of substantive law. It does not exclude certain data because they are for one or another reason untrustworthy or undesirable means of evidencing some fact to be proved. It does not concern a probative mental process,—the process of believing one fact on the faith of another. What the rule does is to declare that certain kinds of fact are legally ineffective as substantive law; and this of course (like any other ruling of substantive law) results in forbidding the fact to be proved at all. But this prohibition of proving it is merely the dramatic aspect of the process of applying the rule of substantive law. When a thing is not to be proved at all, the rule of prohibition does not become a rule of evidence merely because it comes into play when the counsel offers to 'prove' it or 'give evidence' of it; otherwise, any rule of law whatever might be reduced to a rule of evidence; * * *"

The principle of the parol evidence rule is that if parties negotiate, either by parol or memoranda, the details of a contract, and integrate such negotiations into a single instrument, all other indicia of the negotiations on the subject are legally immaterial for the purpose of determining what are the terms of their act. This principle does not prohibit negotiation of more than one agreement at the same time, nor that one agreement may be reduced to writing and another be oral. If such agreements are clearly collateral, separate and distinct as to subject matter there is no problem presented. They are two separate contracts and are to be considered as such. The oral contract is admissible and enforceable, not as an exception to the parol evidence rule, but as a separate jural act. However, if from a consideration of the negotiations, acts, statements and surrounding circumstances, it appears that it was the intent of the parties that the ultimate written instrument would embody the whole of the transaction, and fully cover the subject of negotiation, there can be no collateral or separate oral agreement on the same subject.

Therefore, we must determine from the conduct and language of the parties, the surrounding circumstances and the written instrument, whether it was the intent of the parties that the written instrument embody all of the prior negotiations and represent the final jural act, or whether it represented only a part thereof and it was intended there be an additional, collateral and separate oral agreement.

Again we turn to Wigmore on Evidence, Section 2430, supra, for assistance and quote as follows:

"(3) In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstances whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is men-

tioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation."

The surrounding circumstances at the time of the negotiations between the parties herein was that appellee had purchased a policy of insurance from appellant some months previously. That policy provided initial liability coverage on two automobiles, one of which was ordinarily driven by appellee's son. Upon discovery of the bad driving record of the son, by amendment to the policy, coverage was excluded on the car usually driven by the son, and the son was excluded from any coverage under the policy.

Several months later, appellee purchased another car to be driven by the son. Appellee requested insurance, both liability and collision on the new car and upon the son as driver. Appellee states that appellant's agent told him he would provide such coverage but at substantially higher premium. Appellee further states that he informed the agent he wanted such a policy regardless of cost and that the agent informed him that he was so covered.

Appellant's agent, to the contrary, stated he informed appellee he could not provide such coverage to the son as a driver with appellant's company, but could secure coverage from a substandard company at an extremely high premium. The agent further stated that appellee then informed him that he could not afford such premium but to go ahead and cover the car under his existing policy. Shortly thereafter, an amendment to appellee's policy was delivered to appellee, together with a nominal additional premium charge. The amendment showed liability and collision coverage on the new automobile. Appellee paid the additional premium, and the accident by the son subsequently occurred.

We consider the above testimony concerning the oral negotiation so it may be compared with the writing, to determine if the writing was intended to cover the subject of the negotiations.

The comparison is made with certain established tests applied to the oral agreement: (1) Is it in form a collateral one; (2) It must not contradict express or implied provisions of the written contract; (3) It must be one that parties would not ordinarily be expected to embody in the writing. Mitchill v. Lath, 247 N.Y. 377, 160 N.E. 646, 647, 68 A.L.R. 239, cited in Hartford Fire Ins. Co. v. Shapiro, supra.

We conclude that the oral agreement sued upon here meets none of the above conditions. It cannot be considered collateral in form as the complaint clearly indicates that the oral contract sued upon is identical with the written policy as amended, except for coverage of appellee's son as a driver. The premium alleged and shown to be paid was that charged for the written contract. There was no other premium paid. The property insured is the same.

The oral contract expressly contradicts the provisions of the written contract in that the written contract excluded appellee's son as an insured driver. We take cognizance of appellee's argument that because the last amendment to the policy providing coverage for the Pontiac automobile did not specifically exclude appellee's son as an insured driver, the original exclusion would not be effective. We cannot accept this argument, and must assume that appellee was not convinced of its soundness as of the time of bringing suit, else he would have sued on the written policy.

Surely it cannot be contended that the oral agreement would meet condition (3). Such oral contract as appellee sues upon would ordinarily, even certainly, be expected to be embodied in the subsequent written policy. It was stated in Hartford Fire Ins. Co. v. Shapiro, supra, that "Insurance policies are notoriously complete, and therefore presumably contain the entire agreement of the parties thereto * * *" It is customary for persons purchasing and

selling insurance to expect the policy to embody their complete agreement.

It must be concluded from the evidence that the oral contract sued upon was not collateral, separate and distinct from the subsequently issued written policy, accepted and paid for by appellee, and thus was not an oral contract valid as of the time of loss complained of, which the jury could consider in arriving at its verdict. The trial court erred in refusing to give, at the request of appellant, the written affirmative charge, and further erred in overruling appellant's motion for a new trial. For such error the judgment is hereby reversed and the case remanded.

Reversed and remanded.