STEAGALL, Justice.
Southern United Life Insurance Company appeals from a $15,474.01 jury verdict entered against it for breach of two insurance contracts. We reverse.
Lovie Gregory, as executrix of the estate of Chester Gregory, and Camden National Bank filed suit against Southern United, alleging breach of two insurance contracts and bad faith failure to pay the claims on the two contracts.
Southern United is an Alabama insurance company whose business includes the writing of creditor-debtor life insurance for banks. Camden National Bank (hereinafter “Bank”), acting as an agent for Southern United, issued two certificates of credit life insurance to Chester Gregory. These certificates, dated April 23,1982, and May 17, 1982, were properly issued and sent to Southern United for processing. Chester Gregory died of a heart attack on May 29, 1982. Prior to Mr. Gregory’s death, Southern United requested that he *248 complete an application form which contained health questions. This form, which was signed on May 25, 1982, revealed that Mr. Gregory was 62 years old and was suffering from high blood pressure and diabetes. On June 2, 1982, Southern United declined coverage on the certificate dated April 23, 1982, and on June 14, 1982, declined coverage on the certificate dated May 17, 1982. Southern United did not receive notice of Mr. Gregory’s death until June 14, 1982, when claims were filed on the two certificates of insurance.
The contract or group policy between Southern United and the Bank contained the following provisions:
“EFFECTIVE DATES OF INSURANCE. Each eligible debtor under this policy shall become insured with respect to his indebtedness to the Creditor on the later of the following dates:
“1. The date he becomes eligible for insurance, and if an application is required, applied for such insurance; or
“2. The date on which the Company determines evidence of insurability of the debtor to be satisfactory, if such evidence is required hereunder.
“EVIDENCE OF INSURABILITY. The Company may require evidence of insurability satisfactory to it with respect to each eligible debtor who applies for insurance hereunder with respect to an indebtedness. If the Company finds that any applicant is not an insurable risk according to its underwriting standards, it reserves the right to decline the insurance on the life by indicating its intention in writing to the Creditor within 90 days from the effective date of the individual Certificate. If the debtor should die during the 90 days, the insurance shall be deemed to have been in effect if the Company, acting on its regular underwriting methods, would have accepted the insurance. Any premium paid under this policy for insurance not granted will be refunded to the Creditor on demand; except that no underwriting of applicants or borrowers by the Company, for loans of under $1,000.00, exclusive of interest and other carrying charges, may be done. This prohibition does not include. the writing agent.”
A.L. Johnson, who was president of the Bank, testified as follows when asked how he questioned people when writing a policy for them:
“Well, we are instructed when we become an agent that I have asked the question, now I’m not a medical examiner or medical doctor, how am I going to know if he’s insurable? Well, if you know of anything, you would say you can’t write it. But if you don’t know that, go ahead and write it and the insurance is in force until we reject it. We reserve the right to reject it. But if he dies before we reject it, we pay off on the policy.”
Beatrice Jackson, chief underwriter for Southern United,' testified in pertinent part as follows:
(On cross-examination.)
“Q Now, if your company gets an agent or a contract with an agent in a certain bank, that agent would have authority to bind the company, wouldn’t they?
“A Yes, sir.
“Q Now, in this case Mr. Johnson was the agent. I don’t know whether— you know that, don’t you?
“A Yes, sir.
“Q And when he wrote a certificate of insurance on say me, and he saw me and dealt with me, and that certificate was sent into the company, until they denied it, the company was bound to honor that certificate, weren’t they?
“A Yes, sir.
“Q And with Mr. Gregory they were bound to honor that certificate from Mr. Johnson, were they not?
“A Yes, sir.
“Q And they were bound to honor it, were they not, until they refused to cover it, weren’t they?
“A Yes, sir.”
(On redirect examination.)
*249 “Q ... Tell the ladies and gentlemen of the jury, please, ma’am, what the company policy or the company procedure is in a case such as Mr. Gregory when he died within the 90 day time span between the certificate issuing date and prior to them having — he died prior to them having sent in a rejection to the creditor as provided in the insurance policy.
“A We would have rejected it, as we did in this case.
“Q How do you determine — explain to the ladies and gentlemen of the jury in the underwriting department, how you determine whether you pay it or not pay it.
“A Okay. This is where the underwriting comes into the process. We order inspection reports or medical information. And in this case we ordered — we had a completed application and we also had an inspection report showing that he was in bad health.
“Q So acting on your regular underwriting methods and procedures, you determined he was not insurable; is that correct?
“A Yes, sir.
“Q And you denied coverage; is that correct?
“A Yes, sir.”
Southern United’s motion for directed verdict was granted as to the bad faith claim. However, Southern United argues that its motion for summary judgment and motion for directed verdict as to the breach of contract claim, as well as its motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial, were erroneously denied by the trial court.
Southern United argues that there was not a scintilla of evidence to prove the existence of an oral contract that would modify the written contract, but that even if such evidence existed, parol evidence is not admissible to vary the terms of a written contract. Although Southern United did not object to the admission of parol evidence by A.L. Johnson at the time it was admitted, it did raise the issue in its motion for directed verdict and motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial. This is sufficient to preserve the issue for appellate review, especially in light of the fact that the written contract had not been introduced into evidence at the time the oral testimony was admitted. See National Security Fire & Casualty Co. v. Newman, 53 Ala.App. 614, 303 So.2d 113 (1974); Southern Guaranty Insurance Co. v. Rhodes, 46 Ala.App. 454, 243 So.2d 717 (1971).
In an action to recover on a written contract of insurance, parol evidence is not admissible to aid in the construction of an unambiguous insurance policy. 44 Am. Jur.2d Insurance § 1999, at 998 (1982). In addition, representations made by an agent who solicited the policy are inadmissible to vary the terms of the writings, since in the absence of fraud or mistake such statements are merged into the written contract. 44 Am.Jur.2d Insurance § 2001, at 1000 (1982). Alabama follows this rule of exclusion regarding parol evidence in interpreting insurance contracts. See Ivie v. International Life Insurance Co., 217 Ala. 559, 117 So. 176 (1928). In Southern Guaranty Insurance Co. v. Rhodes, supra, the Court of Civil Appeals held that where a written contract of insurance exists between two parties, parol evidence cannot be received to explain, contradict, or vary its terms, and all parol negotiations, understandings, and agreements are merged into the written policy.
In the instant case, the terms of the policy were unambiguous and there were no allegations of fraud or misrepresentation; therefore, the testimony of A.L. Johnson concerning his understanding of the policy terms should not have been admitted into evidence because it was parol evidence which contradicted the terms of the written policy of insurance between the Bank and Southern United.
*250 Southern United argues that a directed verdict should have been entered in its favor because there was no evidence that Mr. Gregory was covered by a policy of insurance with Southern United at the time of his death.
A motion for directed verdict should be granted where there is not a scintilla of evidence to support an essential element of a claim or where there is no disputed issue of fact upon which reasonable men can differ. Osborn v. Johns, 468 So.2d 103 (Ala.1985). The evidence in this case, excluding the parol evidence, establishes that Mr. Gregory was an uninsurable risk according to Southern United’s regular underwriting methods; that Southern United had a right to decline coverage within 90 days of the date the certificate of insurance was issued; that if Mr. Gregory died within the 90 days, Southern United could still decline coverage if it would have done so under its regular underwriting methods; and that Southern United declined coverage within the 90 days.
Reviewing the facts in the light most favorable to the Bank and Lovie Gregory, we find that reasonable men could only conclude that Mr. Gregory did not have coverage under the certificate of insurance with Southern United.
Based upon the foregoing, we find that the trial court erred in failing to grant a directed verdict in favor of Southern United on the breach of contract claim.
REVERSED AND REMANDED.
SHORES, ADAMS and HOUSTON, JJ., concur.
JONES, J., concurs specially.