Following an accident in which the air bags in Jennifer Ritter's automobile did not deploy, Jennifer Ritter and her husband Daryl Ritter sued Grady Automotive Group, Inc. ("Grady Automotive"), the dealership where she had purchased the vehicle; BMW of North America, LLC ("BMW"), the manufacturer of the vehicle; and fictitiously named parties. The trial court granted the motion to compel arbitration filed by "Grady Buick Company, Inc., incorrectly named Grady Automotive Group, Inc.," as to both Mr. Ritter's and *Page 1060 
Mrs. Ritter's claims, based on an arbitration agreement signed by Mrs. Ritter. The Ritters appeal. We affirm.
 Facts and Procedural History
Jennifer Ritter purchased a new 2003 BMW 745Li automobile from Grady Automotive. Her husband, Daryl, did not ac-company her to the dealership to buy the car. To purchase the car, Mrs. Ritter executed several documents, including a "Motor Vehicle Purchase Contract" ("the purchase contract"), a retail-installment contract, a power of attorney, an arbitration agreement,[1]
and an application for a certificate of title. Mrs. Ritter alleges that the dealership represented to her that the BMW 745Li was the safest car on the road, partly because it had air bags both in the front and on the sides of the car.
While driving the 745Li several months later, Mrs. Ritter was involved in a car accident. None of the air bags in the car deployed. Moreover, the seatbelt allegedly failed to hold Mrs. Ritter in place, and she sustained injuries. Mr. Ritter was not in the car at the time of the accident. Mrs. Ritter sued Grady Automotive, BMW, and fictitiously named defendants, alleging misrepresentations, manufacturing defects, defective design, negligent and/or wanton installation of the air-bag and seatbelt systems, breach of contract, and breach of warranties. Mr. Ritter also sued the defendants, asserting a derivative loss-of-consortium claim.
Grady Buick Company, Inc. ("Grady Buick"), which maintained that it was incorrectly named on the Ritters' complaint as "Grady Automotive Group, Inc.," moved the trial court to compel arbitration of the claims against it based on the arbitration agreement Mrs. Ritter signed at the time she purchased the 745Li. The Ritters objected to the motion, but the trial court compelled arbitration. The Ritters then moved the trial court to alter, amend, vacate, or reconsider its order compelling arbitration, but the trial court denied their motion. The Ritters appeal, arguing that Grady Buick could not compel arbitration because, they argue, it was neither a party to the legal action nor a party to the purchase contract; they argue that they named Grady Automotive in their complaint and that Grady Automotive was the party with whom Mrs. Ritter entered into the purchase contract, although some other sales documents were executed in the name of Grady Buick. Further, they argue that the merger clause in the purchase contract rendered the separate arbitration agreement invalid and that in any event the arbitration agreement does not bind Mr. Ritter because he did not sign it.
 Standard of Review
We conduct a de novo review of a trial court's order compelling arbitration. Smith v, Mark Dodge, Inc., 934 So.2d 375,378 (Ala. 2006).
 "The party seeking to compel arbitration must first prove both that a contract calling for arbitration exists and that the contract evidences a transaction involving interstate commerce. . . . Once this *Page 1061 
showing has been made, the burden then shifts to the nonmovant to show that the contract is either invalid or inapplicable to the circumstances presented."
Smith, 934 So.2d at 378.
 Analysis
The Ritters do not dispute the existence of an arbitration agreement, nor do they dispute that the contract evidences a transaction involving interstate commerce. Instead, they argue only that the arbitration agreement does not apply to this case.
 I.
First, the Ritters argue that Grady Buick cannot compel arbitration of their claims because, they argue, Grady Buick was not a party to the purchase contract and is not a party to this action. Instead, the Ritters argue, Grady Automotive is the named defendant and the other party to the purchase contract. The purchase contract is a form contract, printed on letter-head bearing the name "Grady Automotive Group." However, the disclaimer of warranties contained within the purchase contract names Grady Buick as the "seller" of the automobile, and other documents signed at the time of the purchase name Grady Buick as the seller as well.[2]
Grady Buick argues that the Ritters have waived this argument by failing to raise it in the trial court. See Totten v.Lighting Supply, Inc., 507 So.2d 502, 503 (Ala. 1987) ("[O]n appeal, this court is limited to a review of the record alone, and an issue not reflected in the record as having been raised in the trial court cannot be raised for the first time on appeal." (citing Mobile Wrecker Owners v. City ofMobile, 461 So.2d 1303 (Ala. 1984))). The Ritters respond by arguing that Grady Buick raised the issue before the trial court in its motion to compel arbitration. In their reply brief to the Court, the Ritters cite the following excerpt from Grady Buick's motion to compel: "Comes now the Defendant, Grady Buick Company, Inc. (hereinafter `Grady'), incorrectly named GradyAutomotive Group, Inc." (emphasis added in reply brief). However, Grady Buick's statement in its motion to compel does not raise the issue the Ritters now argue to this Court. In the motion to compel arbitration, Grady Buick asserted a naming error in the Ritters' complaint. It made no argument as to whether it was a party to the purchase contract. Moreover, the Ritters did not challenge Grady Buick's assertion in the trial court. In fact, in their objection to the motion to compel arbitration, the Ritters referred to the "`Motion to Compel Arbitration and For Stay Pending Arbitration' filed by Defendant, Grady Buick Company, Inc." Instead of arguing that Grady Buick could not enforce the arbitration agreement because it was not a party to the action, the Ritters identified Grady Buick as the defendant. In their objection to the motion to compel, they also failed to argue that Grady Buick was not a party to the purchase contract. Because the Ritters first raise this identity issue on appeal, we do not review it. SeeTotten, 507 So.2d at 503.
 II.
Next, the Ritters argue that the arbitration agreement does not apply because the purchase contract contains a merger clause. The purchase contract *Page 1062 
contains the following terms enclosed in a box:
 "DISCLAIMER OF WARRANTIES
 "The Seller, GRADY BUICK CO., Inc. hereby expressly disclaims all warranties, either expressed or implied. . . .
 "I COMPLETELY UNDERSTAND GRADY BUICK CO., INC. IS NOT OBLIGATED TO FURNISH TRANSPORTATION WHILE MY VEHICLE IS BEING SERVICED.
 "The dealer is not a party to any manufacturer's or third party warranty. . . . "No oral representations are binding unless written on this form and all terms of the agreement are printed or written herein."
(Capitalization in original; emphasis added.) The Ritters argue that the last sentence of the disclaimer emphasized above constitutes a merger clause and that all prior or contemporaneous agreements and negotiations have thereby been merged into the purchase contract. Therefore, they argue, the separate agreement to arbitrate, which was not mentioned in the purchase contract, is not part of the contract with Grady Buick and does not apply to this case.
A merger clause creates "a presumption that the writing represents an integrated, that is, the final and complete, agreement of the parties." Ex parte Palm HarborHomes, Inc., 798 So.2d 656, 660 (Ala. 2001). A merger clause invokes the parol evidence rule, which precludes a court from considering extrinsic evidence of prior or contemporaneous agreements in order to "change, alter, or contradict" the terms of the integrated contract. Palm Harbor Homes,798 So.2d at 660.
A merger clause, however, does not bar evidence of contemporaneous collateral agreements between the parties.See Alabama Elec. Coop., Inc. v. Bailey's Constr. Co.,950 So.2d 280, 288 (Ala. 2006) ("`"It is only when the instrument shows that it does not contain all the terms of the contract as to both parties to it that evidence may be offered to show further stipulation than those expressed, unless it isproposed to prove an engagement independent of and collateral tothe matters embraced in such written instrument."'"
(quoting Hartford Fire Ins. Co. v. Shapiro,270 Ala. 149, 153, 117 So.2d 348, 352 (1960), quoting in turn Woodallv. Malone-Harrison Motor Co., 219 Ala. 366, 368,122 So. 357, 358 (1929) (emphasis added in Shapiro))); andSouthern Guar. Ins. Co. v. Rhodes, 46 Ala.App. 454,459, 243 So.2d 717, 721 (1971) ("This [merger-clause] principle does not prohibit negotiation of more than one agreement at the same time. . . . If such agreements are clearly collateral, separate and distinct as to subject matter there is no problem presented. They are two separate contracts and are to be considered as such.").
In Hartford Fire, this Court quoted various tests used by other courts to determine whether an agreement is collateral and therefore outside the scope of a merger clause. The Court quoted Mitchill v. Lath, 247 N.Y. 377, 160 N.E. 646
(1928), a "leading case," which gave three requirements for an agreement to be beyond the scope of a merger clause: "`(1) The agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing.'" Hartford Fire,270 Ala. at 154, 117 So.2d at 353 (quoting Mitchill v.Lath, 247 N.Y. at 381, 160 N.E. at 647). The Court also quoted Professor Wigmore, IX Wigmore, Evidence § 2430, 98 (3d ed.): `"This intent [to form a collateral agreement] must be sought where always intent must be sought . . ., namely, in the conduct and language of the parties and the surrounding circumstances.'"270 Ala. at 154, 117 So.2d at 353. In Southern Guaranty, the Court of Civil Appeals looked to the "conduct *Page 1063 
and language of the parties, the surrounding circumstances and the written instrument" in order to determine "whether it was the intent of the parties that the written instrument embody all of the prior negotiations . . . or whether . . . it was intended there be an additional, collateral and separate oral agreement."46 Ala. App. at 459, 243 So.2d at 721. That court also looked to the Mitchill test to evaluate the collateral nature of the agreements.
We held in Alabama Electric Cooperative that an oral agreement to insure was not collateral to an insurance policy, "[i]n light of the fact that the written contract dealt expressly with the subject matter of the alleged collateral oral agreement." 950 So.2d at 289. The oral agreement "was one the parties would naturally have included in the written agreement."950 So.2d at 289. Similarly, we held in Hartford Fire
that an oral agreement to insure was not collateral to an insurance policy because it was "closely bound to the written one, and no doubt intended to be made part and parcel thereto."270 Ala. at 155, 117 So.2d at 354. The Court of Civil Appeals held in Southern Guaranty that the oral agreement to insure met none of the three factors of the Mitchill
test and, therefore, was not a collateral agreement.
In this case, the free-standing, written, and separately executed arbitration agreement meets all three prongs of theMitchill test. First, it is "collateral in form." InSouthern Guaranty, the Court of Civil Appeals held that an oral agreement to, among other things, provide coverage for the insured's son under an automobile insurance policy was not "collateral in form" because it was "identical with the written policy as amended, except for coverage of appellee's son as a driver." 46 Ala.App. at 460, 243 So.2d at 722. Moreover, "the property insured [was] the same." 46 Ala. App. at 460,243 So.2d at 722. The arbitration agreement in this case is not identical in nature to the purchase contract. The purchase contract covers only that one specific transaction and relates exclusively to Mrs. Ritter's purchase of the BMW 745Li, whereas the arbitration agreement governs the relationship between the parties preceding and following the sale of the car. It covers "any of the negotiations leading to the sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing, purchase of insurance, purchase of extended warranties or service contracts, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease or financing." Unlike the agreements in Alabama Electric Cooperative, the purchase contract does not "deal expressly with the subject matter" of the arbitration agreement. 950 So.2d at 289.
Professor Williston states that "`there are cases where it is so natural to make a separate agreement, frequently oral, in regard to the same subject-matter, that the Parol Evidence Rule does not deny effect to the collateral agreement.'" 11 Richard A. Lord, Williston on Contracts § 33:28 (4th ed.1999) (quoting Magee v. Robinson, 218 Ark. 54, 58,234 S.W.2d 27, 29 (1950)). In this case, we note that Mrs. Ritter and Grady Buick entered into a separately executed financing agreement, i.e., the retail-installment contract, for the sale of the car. Although the purchase contract makes no mention of a separate financing agreement, the Ritters do not claim that the financing agreement cannot be enforced against them because of the merger clause in the purchase contract. It, like the agreement to arbitrate, is a collateral agreement between the parties. Just as it is "natural" to enter into a separate financing agreement in order to facilitate the purchase of a car, so it is natural to enter into a separate arbitration agreement. The arbitration agreement covers disputes that may arise between the parties, whether *Page 1064 
the disputes arise from the purchase contract, the financing agreement, or other agreements such as the purchase of insurance, extended warranties, or service contracts that the parties executed.[3] Thus, the arbitration agreement is "collateral in form." See also Bank Julius Baer Co.v. Waxfield, Ltd., 424 F.3d 278 (2d Cir.2005) (holding that a merger clause in a pledge agreement did not void a previously executed arbitration agreement between the parties).
Second, to be collateral, the arbitration agreement "`must not contradict express or implied provisions of the written contract.'" Hartford Fire, 270 Ala. at 154,117 So.2d at 353 (quoting Mitchill, 247 N.Y. at 381,160 N.E. at 647). In this case, the arbitration agreement does not contradict provisions of the purchase contract. The purchase contract makes no mention of disputes between the parties or procedures for handling problems in the relationship between the dealer and the buyer. By contrast, in Palm HarborHomes, this Court enforced a merger clause in one instrument so as to exclude two other contemporaneous agreements because the latter instruments contradicted the terms of the first, which included the merger clause. 798 So.2d 656. The first instrument, an installment contract, contained an arbitration provision allowing the buyer to select the arbitrator, with the seller's consent. The remaining two instruments, both arbitration agreements, required that any dispute resolution comport with the rules and procedures of the American Arbitration Association, including its procedures for selecting a three-person arbitration panel. This Court upheld the trial court's decision to enforce the terms of the installment contract, holding that the parol evidence rule bars "consideration of the free-standing arbitration instruments,"798 So.2d at 660, because they conflicted with the installment contract, which contained a merger clause. In this case, the terms of the purchase contract and the arbitration agreement present no such conflict.
Finally, "the parties would not ordinarily be expected to embody" the arbitration agreement in the purchase contract.Hartford Fire, 270 Ala. at 154, 117 So.2d at 353
(quoting Mitchill, 247 N.Y. at 381, 160 N.E. at 647). Although including an arbitration agreement within the purchase contract would have been proper, the agreements are not so related that one would expect them to be included in the same document. The arbitration agreement is not necessarily "one the parties would naturally have included in" the purchase contract.[4] Alabama Elec. Coop., *Page 1065 950 So.2d at 289. The arbitration agreement thus meets all three requirements for a collateral agreement.
Because the arbitration agreement is a collateral agreement, distinct from the purchase contract, the merger clause in the purchase contract does not invalidate the arbitration agreement. The two contracts are separate: one governs the sale of the vehicle, and the other governs the resolution of disputes between the dealer and the buyer. "They are two separate contracts and are to be considered as such." SouthernGuaranty, 46 Ala.App. at 459, 243 So.2d at 721. Therefore, the merger clause in the purchase contract does not render the arbitration agreement inapplicable.
 III.
Finally, the Ritters argue that the arbitration agreement does not apply to Mr. Ritter's loss-of-consortium claim because he did not sign the agreement. They argue that he is not a party to the arbitration agreement and that, therefore, he is not bound by its terms. See Ex parte Dickinson, 711 So.2d 984,989 (Ala. 1998) ('"[A] party cannot be required to submit to arbitration any dispute he has not agreed to submit.'" (quotingOld Republic Ins. Co. v. Lanier, 644 So.2d 1258, 1260
(Ala. 1994))).
To support their argument, the Ritters cite Dickinson, in which a husband and wife purchased a car from a dealership. As part of the sale, both Mr. and Mrs. Dickinson signed a retail-installment contract. However, only Mr. Dickinson signed the retail buyer's order, which contained an arbitration provision. Four Justices of this Court joined in the opinion holding that, although the arbitration provision applied to Mr. Dickinson's claims, it did not cover Mrs. Dickinson's claims because she did not sign the retail buyer's order.Dickinson, 711 So.2d at 990 ("Because she was not a signatory to a contract containing an arbitration clause, she cannot be compelled to arbitrate.").
Grady Buick compares the Ritters' claims to those brought inGeorgia Power Co. v. Partin, 727 So.2d 2 (Ala. 1998). In Partin, this Court discussed for the first time "whether a loss-of-consortium claim brought by a nonsignatory spouse must be arbitrated along with the claims of an injured spouse." 727 So.2d at 6. The Court found that, although Mrs. Partin's loss-of-consortium claim was separate from her husband's claim, it "nevertheless springs from the same source" as Mr. Partin's claim. 727 So.2d at 6. The operations contract, on which Mr. Partin based his claims, contained an arbitration agreement signed by Mr. Partin. The Court bound Mrs. Partin to that arbitration agreement as well, holding that, "because Brenda Partin's claims are based upon the contract, her claims are subject to the arbitration clause contained therein."727 So.2d at 7.
Mr. Ritter's loss-of-consortium claim stems from Mrs. Ritter's purchase of the BMW 745Li. Like Mrs. Partin, Mr. Ritter "alleges that [his] injury was caused by the same breach of duties that [his wife] says resulted in [her] injury."727 So.2d at 7. Specifically, the complaint states that, "[a]s a result of acts and failures to act set out earlier herein, Plaintiff, Darryl Bernard Ritter, lost the company, fellowship, cooperation and assistance of his wife. . . ." The "acts and failures to act set out earlier" in the complaint are those allegations made by Mrs. Ritter, including misrepresentations, manufacturing and design defects, negligent and/or wanton installation of the air-bag and seatbelt systems, breach of contract, and breach of warranties. Therefore, just as Mrs. Ritter's claims are *Page 1066 
subject to the arbitration agreement, so is Mr. Ritter's claim. He "`cannot have it both ways; [he] cannot rely on the contract [between his wife and Grady Buick] when it works to [his] advantage and then repudiate it when it works to [his] disadvantage.'" Partin, 727 So.2d at 7 (quotingA.L. Williams Assocs., Inc. v. McMahon, 697 F.Supp. 488, 494 (N.D.Ga.1988)). Therefore, the trial court correctly ordered Mr. Ritter to arbitrate his loss-of-consortium claim against Grady Buick.
 Conclusion
The Ritters fail to show that the agreement to arbitrate "is either invalid or inapplicable to the circumstances presented."Smith, 934 So.2d at 378. Therefore, we affirm the trial court's order compelling arbitration of the Ritters' claims.
AFFIRMED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] The arbitration agreement signed by Mrs. Ritter contains the following language: "READ THIS ARBITRATION [AGREEMENT] CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING THE RIGHT TO BRING A COURT ACTION. SIGN IT ONLY IF YOU UNDERSTAND IT." (Capitalization in original.) It purports to cover
 "all claims, demands, disputes, or controversies of every kind or nature that may arise between [the buyer and the dealer] concerning any of the negotiations leading to the sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing, purchase of insurance, purchase of extended warranties or service contracts, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease or financing."
[2] Specifically, the retail-installment contract, power of attorney, certificate of out-of-county buyer, application for a certificate of title, and vehicle-invoice receipt refer to Grady Buick. Also, Mrs. Ritter made her checks to purchase the car payable to Grady Buick. However, the salesman's worksheet, purchase contract, and delivery checklist used the name Grady Automotive.
[3] As we noted above, the intent to form a collateral agreement "`must be sought where always intent must be sought . . ., namely, in the conduct and language of the parties and the surrounding circumstances.'"Hartford Fire, 270 Ala. at 154, 117 So.2d at 353
(quoting DC Wigmore, § 2430). The fact that the parties executed a number of agreements on various aspects of their relationship is persuasive evidence indicating that they did not intend that only one of those agreements would be effective.
[4] See also Edwards Motors, Inc. v. Hudgins,957 So.2d 444 (Ala. 2006) (enforcing an arbitration agreement, which was a separate document from the motor-vehicle installment-sales contract, credit application, and promissory note also executed when a buyer purchased an automobile); Ex parte Bill HeardChevrolet, Inc., 927 So.2d 792 (Ala. 2005) (enforcing an arbitration agreement, signed as part of the purchase of an automobile, as a separate document from the "Retail Purchase Contract" and "Bailment/Conditional Delivery Agreement");Dan Wachtel Ford, Lincoln, Mercury, Inc. v. Modas,891 So.2d 287 (Ala. 2004) (enforcing a separate arbitration agreement, which the purchaser of a sport-utility vehicle signed in addition to a retail-installment contract and other documents); and Harold Allen's Mobile Home Factory Outlet,Inc. v. Early, 776 So.2d 777 (Ala. 2000) (enforcing an arbitration agreement that was signed separately from the purchase contract covering the sale of a mobile home).