Argued September 13; affirmed November 21; rehearing denied
December 19, 1933

# YOSHIDA ET AL. *v.* SECURITY INSURANCE CO. OF NEW HAVEN, CONN., ET AL.

(26 P. (2d) 1082)

*Edward J. Clark,* of Portland (George S. Shepherd, of Portland, on the brief), for appellants.

*L. A. Recken* and *W. E. Cameron,* both of Portland, for respondent.

ROSSMAN, J. A brief statement of the facts will facilitate an understanding of the disposition which we are about to make of the assignments of error. April 11, 1923, when one Mrs. L. M. Kandle was the owner of a tract of land comprising 2.726

acres· in Multnomah county, she, as lessor, and one W. Loy, as lessee, executed a lease whereby she granted to Loy possession of the major part of the land for a term of ten years in consideration of his covenants recited in the lease. Among those covenants were the following:

"All buildings now on said premises and all buildings to be built on said premises during the term of this lease are. to remain on the place and belong to the said L. M. Kandle. * * * The lessee is permitted to sublet to T. Yoshida who is now operating a hog-feeding plant on this place for the term of this lease such portion of the premises as may be agreed upon between them, and it is understood that said lessee or said T. Yoshida may maintain a hog-feeding plant according to the laws governing the same for at least three hundred hogs; all buildings to be maintained on the premises in good order and condition and in accordance with the laws governing the same; said buildings to remain on the premises during this lease and at the termination thereof. * * * It is understood that the title to the buildings now on said premises and to be erected by the lessee shall vest in the lessor; said buildings to be kept in good condition and state of repair during the term of this lease."

The lease contained a further provision by which the lessor, at the end of the first three-year period, could cancel it, being required, however, to give the lessee thirty days' notice of intention so to do. April 21, 1923, Loy and the aforementioned T. Yoshida entered into a lease whereby Yoshida was given possession of two portions of the aforementioned property for the term beginning April 1, 1923, and ending April 1, 1933. One of these tracts was 100 by 110 feet in area and the other approximately 80 by 150 feet. This lease required Yoshida to pay $15 per month rent for the period ending April 1, 1926, and $25 per month

for the balance of the ten-year term. This instrument contained the following provisions:

"All buildings now on said premises and all buildings to be built on said premises during the term of this lease are to remain on the place and to belong to the owner of the premises, L. M. Kandle, her heirs and assigns. * * * It is understood and agreed that the title to the buildings now on said premises or to be erected by the lessee shall vest in L. M. Kandle, her heirs and assigns; said buildings to be kept in good condition and state of repair during the term of this lease by said T. Yoshida."

September 16, 1926, Loy assigned all of his interest in the Kandle-Loy lease to G. Lee and Jack G. Luey, subject to the rights of T. Yoshida. In the assignment instrument Lee and Luey assumed the obligations of Loy and agreed to obtain for the latter a release from Mrs. Kandle. Upon the same day Lee and Luey, as lessors, and T. Yoshida, as lessee, effected an agreement which bound Lee and Luey to obtain a modification of the Kandle-Loy lease whereby the lessor would surrender her right to terminate that lease upon thirty days' notice, and T. Yoshida bound himself to pay in consideration thereof $30 a month rent instead of $25. Upon the same day, that is, September 16, 1926, Lee and Luey and the three appellants, Mary E. Hase, E. Louise Copeland and Fay Kandle, who had succeeded to the title of Mrs. Kandle, and whom we shall hereafter refer to as the defendants, executed an instrument which released Loy from the obligations of his lease and substituted Lee and Luey in his place. It also modified the original lease so that it could no longer be terminated at the option of the lessors. A further provision of this instrument when it left the draftsman's hand, which required the lessees "to keep the buildings insured on said prem-

ises in a sum not less than $2,000 loss payable to the lessors as their interest may appear" was stricken out before the document was signed. December 28, 1927, Lee and Luey assigned their rights to Joe Bussone, and on March 18, 1929, Bussone assigned his interest in the lease to Mike Ratoza.

The evidence indicates that T. Yoshida, on April 21, 1923, was already in possession of the land. During his occupancy he constructed upon the premises three structures which he used in his business of operating a hog-feeding plant. This business consisted of purchasing small pigs and fattening them with swill collected from hotels and restaurants in Portland. Assisting T. Yoshida in the conduct of this business was his nephew, S. Yoshida, one of the two plaintiffs. December 10, 1926, T. Yoshida, upon leaving for Japan, sold the hogs, trucks and other assets which comprised his hog-feeding plant to the plaintiffs for $4,250, and they thereupon continued to operate that business. The uncontradicted testimony of S. Yoshida shows that upon acquiring ownership the two plaintiffs paid $35 a month rental as compensation for the use of the premises. It will be observed that this amount is $5 a month more than any of the aforementioned leases required. The same witness testified that this rent was paid, at the beginning, to Luey, next, to Bussone, and finally, to Ratoza. November 1, 1930, the defendant, Security Insurance Company, pursuant to the plaintiffs' request, issued a policy of insurance wherein it promised to pay to the plaintiffs the sum of $2,000 in the event of the destruction by fire of the three buildings used by the plaintiffs in their hog-feeding business. The plaintiffs at that time paid the premium exacted by the insurance company. August 26, 1931, the buildings were destroyed by fire, and thereupon

the plaintiffs vacated the premises. Since that time they have paid no further rent and have declined to rebuild any of the aforementioned three structures.

Besides those formal allegations that generally appear in the pleadings in suits of this character, the complaint alleges the issuance of a policy of insurance (a copy accompanies the complaint) upon the request of the plaintiffs; the destruction of the buildings by fire; plaintiffs' submission to the insurance company of "their proof of loss covering their loss on said buildings"; the assertion, without justification by the defendants Hase, Copeland and Fay Kandle of an interest in the insurance "after the submission of their [plaintiffs'] proof of loss"; and that thereupon the insurance company declined to pay the insurance money to any of the claimants. The complaint does not aver that the plaintiffs possessed any interest in the insured structures, unless such interest can be inferred from the above-quoted language, from the fact that the insurance company issued the policy of insurance, or from the Leased Ground clause contained in the policy which reads as follows:

"It is understood and agreed that the property insured hereunder stands on leased ground, lease expiring 1933. It is hereby made a warranty on the part of the insured, and a condition precedent to the right of recovery, that this company shall be notified in writing, within ten days, of any notice to vacate premises or refusal of the lessor to renew or grant a new lease."

The insurance company filed neither motion nor demurrer but submitted an answer which admitted all the averments of the complaint and prayed for the allowance of an attorney fee of $250.

The defendants Hase, Copeland and Kandle, after their demurrer which challenged the sufficiency of the

complaint as the averment of a cause of suit had been overruled, filed an answer which admitted all of the averments of the complaint except the one which alleged that the defendants' claim to the money was fictitious. By way of cross-complaint, the defendants alleged the execution of the various leases to which we have already referred, and then averred:

"The said T. Yoshida further covenanted and agreed, and it was contemplated as a further inducement to the making of said lease described in paragraph one hereof and of this sub-lease that T. Yoshida should construct a hog-feeding plant on said demised premises according to the laws governing same for at lease 300 hogs; all said buildings to be maintained by the said sub-lessee on said premises in good order, repair and condition, and in accordance with the laws governing the same; said buildings to remain on the premises during the said sub-lease, and at the termination thereof to remain the property of the said L. M. Kandle, her heirs or assigns and the said sub-lessee therein further covenanted and agreed that the title to said buildings then on or thereafter erected thereon by said sub-lessee should immediately vest in the said L. M. Kandle, her heirs and assigns, and that the sub-lessee would keep in good condition and state of repair said buildings, during the term of said sub-lease. * * * That plaintiffs at the date of said insurance policy and the fire were in possession of said premises for and as agents of said T. Yoshida. * * * That neither of the plaintiffs had or has any interest in said premises, lease, sub-lease or the buildings and improvements erected upon the demised premises. * * *"

The reply denied all averments of new matter except those in harmony with the complaint.

Defendants (omitting the insurance company) contend that (1) the complaint fails to allege an insurable interest in the plaintiffs and that, therefore, the demurrer should have been sustained; (2) by virtue of

the Parol Evidence rule the aforementioned Leased Ground clause of the insurance policy fixed the plaintiffs' status as assignees of the Loy-T. Yoshida lease; (3) the covenants to repair and maintain the buildings in good condition until surrender of possession imposed upon the plaintiffs the duty to rebuild when the structures were consumed by the fire; (4) since the plaintiffs were subjects of the Emperor of Japan, section 19-108, Oregon Code 1930, renders void the sublease upon which they depend; and (5) the circuit court erred in awarding to the insurance company an attorney fee.

We shall first determine whether the plaintiffs, during their occupancy, had a tenancy month by month, as they contend, whether they were agents of T. Yoshida, as defendants' answer alleges, or whether they were the assignees of T. Yoshida, as defendants' brief argues.

██ The defendants contend that the Parol Evidence rule prevents the plaintiffs from making any explanation of the Leased Ground clause of the insurance policy, that the clause fixes the plaintiffs' status as assignees of the Loy-T. Yoshida lease, and that, being assignees, they were bound by all of its covenants. We have already quoted the Leased Ground clause. The following provisions of the policy are also material:

"This entire policy shall be void * * * if the interest of the insured in the property be not truly stated herein. * * * This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple. * * * If with the consent of this company an interest under this policy shall exist in favor of a mortgagee or of

any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto.''

The Loy-T. Yoshida lease would have expired in 1933. The tenancy of the plaintiffs, being one of month by month, as we shall later see, and therefore subject to termination upon thirty days' notice (section 5-207, Oregon Code 1930), would also have expired in 1933 if the parties had not terminated it sooner by the service of a thirty-day notice. The instrument under consideration was prepared by the insurance company and therefore all ambiguities should be resolved against it. It has not subscribed to this objection interposed by the defendants and now under consideration. It seems evident that the insurance company did not desire that information concerning the plaintiffs' interest in the land immaterial to it should be stated in the Leased Ground clause. That portion of the policy is attached to it in the form of a rider. Virtually all of it is printed and the entire strip of paper is only three and one-half inches long. After the words ''lease expiring'' is a blank space less than three inches long which is the only space provided for inserting detailed information. Into this space the agent typed ''1933''. Had he added that the plaintiffs' rights could be terminated before 1933 through the service of a thirty-day notice of intention to vacate, and also through a ten-day delinquency in the payment of rent, the present contention would clearly lack merit. It seems safe to assume that the insurance company desired the agents to state in this brief blank space the date the lease

would automatically expire if lessor and lessee faithfully performed its covenants, and if neither exercised any option to terminate it sooner. The above being our opinion, it follows that we find no merit in this contention.

■ We shall now state briefly the reasons which have persuaded us that the plaintiffs' tenancy was one of month by month. The fact that they were in possession at the time the policy was written and when the fire occurred affords a basis for disputable presumption, as the defendants argue, that they were the assignees of the Loy-T. Yoshida lease (*Montesano Lumber & Manufacturing Co. v. Portland Iron Works,* 94 Or. 677 (186 P. 428)), but it will be recalled that, although they paid rent, at first to Luey, then to Bussone, and finally to Ratoza, the only available evidence shows that no lease was ever assigned to them and they never possessed any document delineating their rights. It will also be recalled that they paid $5 a month more rent than the amount stipulated in any of the aforementioned leases. Paying due heed to the aforementioned presumption, we do not believe that the plaintiffs ever became the assignees of any lease, and, since they purchased from T. Yoshida, at a very substantial price, all of the property which constituted the hog-feeding business conducted by him, we are clearly satisfied that they were not his agents. We are also satisfied that they never bound themselves to the performance of the covenants of any of the aforementioned documents. The able judge who presided over the trial in the circuit court drew from the evidence like conclusions. We believe that the plaintiffs were in possession, under a tenancy of month by month granted to them by the aforementioned tenants of Mrs. Kandle and her successors in interest.

 Since we have arrived at the conclusion that the plaintiffs were in possession upon a tenancy of month by month granted to them by the defendants' lessee, they bore no relationship of privity to the defendants (Tiffany, Landlord and Tenant, p. 1,000, § 162, and 16 R. C. L., Landlord and Tenant, p. 879, § 384), and the conclusion naturally follows that the defendants have no interest in the policy of insurance nor in any sum of money which the plaintiffs may obtain upon it. None of the documents required the plaintiffs, nor any other tenant, to procure fire insurance protection for the defendants. In the absence of any agreement requiring him to do so, a tenant is not required to provide insurance protection for his landlord. Tiffany, Landlord and Tenant, § 145. A provision in one of the aforementioned leases which incorporated such a requirement was stricken out before it was signed. One who has an insurable interest in property may secure a policy of fire insurance for his protection, and, upon the destruction of the property, is entitled to keep the amount obtained from the insurance company even though some one else, also possessed of an insurable interest, and whose foresight did not impel him to obtain insurance protection, is compelled to sustain a heavy and burdensome loss. *Ely v. Ely,* 80 Ill. 532. The obligations of the fire insurance company were for the protection of the plaintiffs, and the money upon its payment will belong to them solely. The controversy now before us is very similar to the one disposed of in *Miller v. Gold Beach Packing Co.,* 131 Or. 302 (282 P. 764, 66 A. L. R. 858). We there held that the landlord was not entitled to the insurance money which the tenants' fire insurance policy had rendered available. We remain satisfied with that conclusion. In the volume and page last cited appears a review of several

decisions of other courts in harmony with our holding in *Miller v. Gold Beach Packing Co.,* supra. See also 8 Couch, Cyc. of Ins. Law, § 1935. We are, therefore, of the opinion that the defendants have no interest in this policy of insurance which can enable them to maintain in their defense, and, of course, none which authorizes recovery upon their cross-complaint. However, believing that the public policy of this state (§ 46-1602, Oregon Code 1930, and 14 R. C. L., Insurance, p. 905) is violated when one procures fire insurance upon property in which he has no interest, we shall analyze the contention of the defendants that the complaint and the evidence fail to disclose that the plaintiffs possessed an insurable interest in the property under consideration.

▆▆▆ Both the pleadings and the evidence in actions upon policies of fire insurance must disclose that the insured at the time the policy was issued and also when the fire occurred possessed an insurable interest in the property. *Hardwick v. State Ins. Co.,* 20 Or. 547 (26 P. 840); *Chrisman v. State Ins. Co.,* 16 Or. 283 (18 P. 466); Cooley's Briefs on Insurance (2d Ed.), p. 296. This court is committed to the rule that an exhibit attached to a pleading cannot supply an allegation otherwise missing. *Lorenz Co. v. Gray,* 136 Or. 605 (298 P. 222, 300 P. 949); *Kerns v. Union County,* 123 Or. 103 (261 P. 76). Therefore, in determining whether the complaint alleges an insurable interest in the plaintiffs, we shall omit consideration of the statements contained in the policy of insurance. It is not necessary that the insured's interest in the property should be alleged in direct terms if that fact appears inferentially. 26 C. J., Fire Insurance, p. 491. It will be recalled that the complaint alleges that after the fire the plaintiffs submitted to the insurance com-

pany "their proof of loss covering their loss on said buildings" and that "after the submission of their proof of loss" the defendants asserted a right to the insurance money. While this constitutes a very poor averment that the plaintiffs possessed an interest in the structure, nevertheless, it amounts to more than silence. It affords a basis for an inference that the plaintiffs possessed a sufficient interest in the destroyed property that they sustained a loss through the fire. *Phoenix Ins. Co. v. Benton,* 87 Ind. 132. Next, the issuance of the policy by the insurance company is an admission that the plaintiffs possessed an insurable interest in the property. *Tabor v. Goss & Phillips Manufacturing Co.,* 11 Colo. 419 (18 P. 537); *Western Horse & Cattle Insurance Co. v. Scheidle,* 18 Neb. 495 (25 N. W. 620); *Peoples Fire Insurance Co. v. Heart,* 24 Ohio State 331; Cooley's Briefs on Insurance (2d Ed.), p. 308. Thus, it appears from the complaint that the plaintiffs possessed an insurable interest in the property, and hence, it is evident that the complaint discloses a cause of action in their favor. We also believe that the evidence discloses that the plaintiffs possessed an insurable interest in the property described in the policy. We have already pointed out that theirs was a tenancy of month by month, and we have also seen that, by virtue of section 5-207, Oregon Code 1930, such a tenancy cannot be terminated by either party in the absence of an agreement to the contrary, except upon thirty days' notice. A lessee has an insurable interest in property possessed by him under the lease. *Griffin v. Pfeffer Lumber Co.,* 285 Ill. 19 (120 N. E. 583). Cooley's Briefs on Insurance (2d Ed.), p. 237. This is true, even though the lease is a parol one. *Getchell v. Mercantile & Manufacturers Mutual Fire Insurance Co.,* 109 Me. 274 (83 Atl. 801,

42 L. R. A. (N. S.) 135, Ann. Cas. 1913E, 738). In the two volumes last cited the editors review many cases holding that a tenant has an insurable interest in leased property. Among other cases cited in those annotations is *Schaeffer v. Anchor Mutual Fire Insurance Co.,* 113 Iowa 652 (85 N. W. 985) wherein the tenancy was at will, subject to termination upon thirty days' notice. See, however, *Schaeffer v. Anchor Mutual Fire Insurance Co.,* 133 Iowa 205 (100 N. W. 857, 110 N. W. 470). As was said in *Getchell v. Mercantile & Manufacturers Mutual Fire Insurance Co.,* supra:

"A contract of insurance is a contract of indemnity, the object being to reimburse the insured for his actual loss not exceeding an agreed sum. * * * The crucial question therefore is, Will the insured be directly and financially affected by the loss of the property insured? If so, he has such an interest as the law will recognize. The loss must not be indirect or sentimental but direct and actual. It is not necessarily an interest in the property in the sense of title, but a concern in the preservation of the property and such a relation to or connection with it as will necessarily entail a pecuniary loss in case of its injury or destruction. * * * It has, therefore, been held that it is sufficient if the insured has any legal interest whatever as an owner in fee, a mortgagee, a tenant for life or a lessee."

For a citation of other cases see 26 C. J., Fire Insurance, p. 34, § 16. In *Griffin v. Pfeffer Lumber Co.,* supra, where the facts were substantially similar to those before us, the court held that the tenant possessed an insurable interest entitling him to enforce liability upon the policy of insurance. It is evident that the plaintiffs in the present case were bound to sustain a loss by the destruction of the property which they

occupied. We, therefore, conclude that they possessed an insurable interest in the insured structures.

◼ Having made the foregoing disposition of the preceding assignments of error, it necessarily follows that the plaintiffs owed no duty to rebuild the structures even though the covenants to repair could be considered as covenants to rebuild.

◼ Next, the defendants point out that the Kandle-Loy and Loy-T. Yoshida leases, both of which were executed prior to the enactment of our Alien Land law (1923 Session Laws, chapter 98, § 8, codified as § 19-108, Oregon Code 1930), are valid and then argue that any leasehold estate acquired by the plaintiffs since the enactment of that law are rendered nugatory by virtue of the prohibitions of that statute. The treaty effected between the United States of America and the Empire of Japan (37 U. S. Stat. at Large, p. 1504) February 21, 1911, and now in effect, provides:

"The citizens or subjects of each of the High Contracting Parties shall have liberty to * * * lease land for residential and commercial purposes * * *."

We believe that the operations which the plaintiffs were conducting upon the premises under consideration were not agricultural but were commercial, and, therefore, protected by the provisions of the treaty. We find no merit in this contention.

◼ Lastly, the defendants contend that the court erred when it awarded to the insurance company $200 to compensate it for the services rendered by its attorney in this suit. Since the defendants possessed no interest in the policy of insurance, this assignment of error clearly lacks merit.

It follows from the above that the decree of the circuit court is affirmed.

RAND, C. J., BELT and KELLY, JJ., concur.