298 So.2d 236

**NATIONAL SECURITY FIRE AND CASUALTY COMPANY, a corporation**

v.

**Walston HESTER et al.**

**SC 732.**

Supreme Court of Alabama.

July 25, 1974.

Rosser & Munsey, Tuscumbia, for appellant.

Tompkins & Tompkins, Tuscumbia, for appellees.

BLOODWORTH, Justice.

The appellant (complainant below), National Security Fire and Casualty Company, filed a complaint in the Circuit Court of Colbert County against the appellees (respondents below, Walston Hester, Jerry Bolton, Sarah Bolton, and the Farmers Home Administration seeking a declaratory judgment that National Security was not liable on a policy of fire insurance issued to the Boltons on the ground that the Boltons had no insurable interest in the dwelling house covered by the policy in that Hester was the true owner. [Farmers Home Adminstration made no claim and was dismissed from the suit.] The respondents, by cross-bill, claim the full amount of the policy, $6,000.00, and allege that the Boltons were vendees in possession of the insured dwelling at the time of the fire and thus had an insurable interest therein. The circuit judge, sitting without a jury, denied the relief sought by National Security and rendered judgment in favor of the Boltons and against National Security in the sum of $6,000.00. Hence, this appeal. We affirm.

It appears that on September 16, 1972, Walston Hester granted the Boltons a written option to purchase one hundred forty-one acres of land in Colbert County on which was situated a small house. The purchase price was stated to be $35,250.00. The option on a standard F. H. A. form, was, by its terms, irrevocable for a period of six months and recited the receipt by Hester from Bolton of $1.00. It contained the following clause:

"9. Loss or damage to the property by fire or from an act of God shall be at the risk of the seller until the deed to the buyer has been recorded and in the event that such loss or damage occurs, the buyer *may*, without liability, refuse to accept conveyance of title or he *may* elect to accept conveyance of title in which case there shall be an equitable adjustment of the purchase price." (Emphasis supplied.)

On October 10, 1972, the Boltons accepted the offer, in writing, on the terms contained in the option. Following the Boltons' acceptance, the F. H. A. agreed to loan the Boltons part of the purchase money. As a condition of the loan commitment, the Boltons were required to purchase a $6,000.00 standard fire insurance policy on the house. Shortly after the F. H. A.'s loan commitment, the Boltons moved into the house. On October 17, 1972, the Boltons applied for the necessary insurance at the City Insurance Agency at Russellville, Alabama. The agent, one Masingill, filled in and signed the application on a form supplied by National Security. On the following day, National Security issued the policy in the name of the Boltons. The policy was likewise signed by Masingill.

On November 21, 1972, the house, while occupied by the Boltons, was completely destroyed by fire. The loan from F. H. A. was never closed.

Before the fire, the Boltons had improved the insured house by replacing numerous windows and doors, and laying linoleum. The value of these improvements was in dispute.

In January, 1973, Hester and the Boltons executed a new contract on the same property except for the two acres on which the house had been situated. The new purchase price was $28,500.00. Hester built a new house on the two acres, and although the Boltons moved into the new house, Hester still owns the house, as well as the two acres on which it is situated, and there exists no contract for its purchase between Hester and the Boltons. Mr. Bolton testified that if he ultimately prevails in this suit, he will pay the money to Hester even though he is not legally obligated to do so.

The application form on which the agent took the Bolton's application for insurance contains this question: "Does applicant have full legal title?" Thereafter appears a blank, and written in handwriting, the answer: "Yes." There also appears the question: "Is property occupied by owner?" and thereafter a blank and the answer: "Yes," again written in handwriting. This form was signed by the agent—not the Boltons.

The policy of fire insurance issued by National Security provides as follows:

"INSURANCE PRO-RATED TO INSURED'S INTEREST: If the subject of this insurance be a building located upon land not owned solely by the named insured, the insurance applicable to such building in case of loss shall cover only for the benefit of the named insured and then only in the proportion of the insured's interest to all interests in the land on which the insured building is/was located."

■ The appellant has made five assignments of error. Assignments of error three, four and five charge, in essence, that the evidence is insufficient to support certain findings of fact by the trial court. In regard to those assignments, the appellant has not included a condensed recital of the evidence given by each witness in narrative form as required by our Rule 9(b). Furthermore, in the argument purportedly directed to those assignments of error, the appellant has cited no authority but rather argues that the trial court erred in allowing Hester (the vendor) to give his opinion as to the value of the house before the fire in that Hester had not been qualified as an expert. Since the appellant has made no assignment of error raising this latter issue, this issue is not presented to us on this appeal. Likewise, since none of the argument is directed to those assignments of error which do raise the sufficiency of the evidence, the same are considered waived. Lowery v. Stinson, 291 Ala. 415, 282 So.2d 244 (1973).

We now address ourselves to the remaining two assignments of error which comprise the heart of appellant's contentions.

In assignment of error one, appellant contends that the court erred in holding that the Boltons had an insurable interest

in the subject property. In support of this assignment of error, appellant argues that before legal title passes, a vendee has an insurable interest in the property purchased only if the risk of loss has shifted to the vendee and that under the contract between Hester and Bolton, the risk of loss remained with Hester, the vendor, citing Alabama Farm Bureau Mutual Ins. Serv. v. Nixon, 268 Ala. 271, 105 So.2d 643 (1958).

In assignment of error two, appellant contends that if the Boltons had any insurable interest in the subject property it was an interest less than the full value of the property. In support of this assignment of error, appellant argues that one who has less than full legal title can only have an insurable interest to the extent of the value of that interest and that the value of the Boltons' interest was the $1.00 option money, citing Royal Exch. Assur. of London, Eng. v. Almon, 206 Ala. 45, 89 So. 76 (1921).

In opposition to these arguments, appellees contend that a vendee in possession, who has made partial payment and improved the property has an insurable interest equal to the full value of the insured property because such vendee has a substantial interest in its preservation, citing American Equitable Assur. Co. v. Powderly Coal & Lumber Co., 221 Ala. 280, 128 So. 225 (1930).

Appellees also argue that, notwithstanding the question and the affirmative answer in the policy application as to whether applicant had full legal title, appellant's agent (who filled out the application and signed it himself) knew the true situation when the policy was issued. Therefore, it is argued appellant has waived this condition and is estopped to question the sufficiency of the Boltons' insurable interest, which is the full face value of the policy because no one else held insurance on the property. Appellees also cite Royal Exch. Assur. of London, Eng. v. Almon, supra, and American Equitable Assur. Co. v. Powderly Coal & Lumber Co., supra.

Both parties rely on the provisions of Tit. 28A, § 317, Code of Alabama 1940, as recompiled 1958 [§ 317, Act No. 407, p. 707, Vol. II, Acts of Legislature, Regular Session 1971, entitled "The Alabama Insurance Code"]:

"§ 317. Same; property insurance.— (1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.

"(2) 'Insurable interest' as used in this section means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.

"(3) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof."

Although we have not found that this section has as yet been construed by this Court, it is merely declaratory of those legal principles which have long governed the concept of insurable interest in this State. [The Act became effective January 1, 1972.] The doctrines of waiver and estoppel are an integral part of this concept. This Court demonstrated the interrelation of these principles in American Ins. Co. v. Newberry, 215 Ala. 587, 112 So. 195 (1927), viz.:

"'Whoever * * * may fairly be said to have a reasonable expectation of deriving pecuniary advantage from the preservation of the subject-matter of insurance, whether that advantage inures to him personally or as the representative of the rights or interests of another, has an insurable interest.' [Citations omitted.]

"Unquestionably, these plaintiffs . . . had an insurable interest. . . .

"[5] But, even were it otherwise, it is thoroughly well settled that—

" 'Where the company has, with knowledge of the nature of the interest of the insured, recognized such interest as sufficient to support a policy, it cannot question the sufficiency of such interest.' 26 Corp.Jur. 36, § 22.

"Conceding that this rule requires that the assured shall occupy such a relation to the property as would give him *some sort* of interest in its preservation, it cannot be denied that [plaintiffs] have [an] interest [in the] property, such as would relieve their contract of insurance from the *merely gambling element* which is offensive to public policy. Quoting the language of the Supreme Court of Pennsylvania:

" 'This company demanded and received from this plaintiff, as the lawful holder of this policy, all the benefits and advantages which it was entitled to receive under it as a valid subsisting policy, up until the moment of the fire, and it would be a perversion of justice to permit it now to .deny its liability and to allow it to escape the payment of its just dues under the contract. That is precisely what estoppel means.' " [Citations omitted.]

As we have already stated, the insureds were vendees in actual possession after partial payment of the purchase price pursuant to an executory contract for sale. The insureds had also made substantial improvements to the insured premises. We can say, beyond peradventure, that such interest is at least that "some sort of interest" in the preservation of the insured property which is required by public policy to remove the "mere gambling element" from a contract of property insurance. There is no evidence of any misrepresentation or concealment by the Boltons. They acted in good faith. If the insurer, National Security, had knowledge that the Boltons did not own the full legal title at the time the policy was issued, then National Security is estopped to question the sufficiency and the amount of the Boltons' insurable interest.

At trial, Mr. Masingill, National Security's agent, testified, inter alia, as follows:

"Q. Will you elaborate on the agency contract just a little bit? What I am trying to find out is whether or not you are a general agent of National Security or a separate agency of National Security.

"A. I am just an agent. I have authority to write insurance for National Security and I have authority to sign the policies.

"Q. All right, you do have authority to sign the policies?

"A. Yes, but all policies are made up in Elba, Alabama, and sent back to me unsigned.

"Q. And you sign them and deliver them?

"A. Yes.

\* \* \* \* \* \*

"BY THE COURT: So if you went to the post office tonight and mailed my letter, it would be insured as of the time and date it was postmarked as leaving Russellville?

"A. Yes.

"MR. ROSSER CONTINUES: Does National Security, from time to time, refuse an application on a policy that you send them?

"A. I have never had a refusal.

"Q. And under that, if you issue a policy, it is in effect the day that you mail the application?

"A. Yes.

\* \* \* \* \* \*

"Q. All right, Mr. Masingill, do you recall when the Boltons came down to buy insurance from you?

"A. Yes.

"Q. Let me hand you this document, which is marked Exhibit 3, and I ask you to look over that document, which is already in evidence. Is that the application which you sent to National Security for the policy?

"A. Yes.

"Q. Now, there is a place down there that says 'name and address of mortgagee,' and you have put 'United States of America Farmers Home Administration, Russellville, Alabama.'

"A. That is right.

"Q. Then on the place where it says 'Does applicant have full legal title,' you have put 'yes.'

"A. That is right.

"Q. Now, when the Boltons came down and asked you to issue this insurance, tell us, the best you recall, just what they said.

"A. They just wanted to take out insurance on *the property that they were buying* and they said they needed the policy for the Farmers Home Administration.

"Q. Did they show you any paper from FHA?

"A. I don't remember any.

"Q. As I understand, you did go and get a paper from FHA?

"A. When I received the policy, the best I remember, I took it up to FHA in Russellville and Mr. Creamer didn't have any record of it and at that time, I didn't know that it was in Colbert County, because it is situated right on the line, so they called the Tuscumbia office and picked up the papers over there.

"Q. Do you happen to have that form with you?

"A. Yes.

"Q. On Exhibit 3, there is a place that says 'Does applicant have full legal title,' and you have marked that 'yes.' Now, did you say the Boltons told you that they wanted to buy insurance *on the property that they were buying*?

"A. Yes.

\*     \*     \*     \*     \*     \*

"A. I don't remember whether he said he was getting a loan or not. He just said he needed the policy for the Farmers Home Administration. Whether the loan was through or not, I didn't know.

"Q. *Did he mention to you who he was buying it from*?

"A. *Yes.*

"Q. *Who was that*?

"A. *Walston Hester.*

\*     \*     \*     \*     \*     \*

"Q. Here is a statement where it says that he provide a standard fire and extended coverage—

"A. I have seen these before. Most everybody that goes through FHA has this but I don't remember whether Jerry brought it in or not. He just told me that he needed it.

"Q. He could have brought it in and showed it to you?

"A. Yes, he could have.

"Q. The premium was paid to you at that time?

"A. Yes.

"Q. When he made the application out?

"A. Yes, I am almost positive that it was because I sent in the check. You have to send in the check with the application, to National Security.

"Q. And you did send his check in?

"A. No, I sent my check in.

"Q. Your check?

"A. Yes, I always do that.

"Q. But he paid you?

"A. Yes.

"Q. And the amount set forth on the policy is the amount that he paid you?

"A. Yes.

"Q. All right, that is all.

\*      \*      \*      \*      \*      \*

"BY THE COURT: Mr. Masingill, I show you exhibit 4. Was that the copy of the policy that you signed and delivered to Mr. Bolton?

"A. Yes.

"BY THE COURT: And you signed it right here where it says 'Agency at Russellville, Alabama, City Insurance Agency'—the line above that?

"A. Yes.

\*      \*      \*      \*      \*      \*

"Q. Now, you had sold other policies to other people when the loan from FHA had not been completed, where they were using the money that was being borrowed to pay the settlement. Did you or did you not take it that the complete sale and all of the mechanics of it had not been completed when you furnished the insurance policy to the FHA?

"A. That is the way it is on all of the loans.

"Q. It is not completed?

"A. They have to have the policy before it is completed.

"Q. All right, that is all.

\*      \*      \*      \*      \*      \*

"Q. *But on the question saying 'Do you have full legal title,' you answered that 'Yes.' Did you base that on what the Boltons told you?*

"A. *Let me answer it this way. On any application or policy that you handle for not only FHA or Franklin Federal—when I type the policy, the people don't own the house then. They take the policy with them. They require that before they close the loan. I didn't know for sure whether he owned the property or not.*

"Q. *But you answered the question 'Do you have full legal title,' 'Yes'?*

"A. *Yes."* [Emphasis supplied.]

From the agent's testimony, it seems obvious to us that he knew the Boltons didn't own the legal title, but were merely vendees under an executory contract. He was familiar with the F. H. A. practice of requiring insurance by the vendee before a closing and with the standard form the F. H. A. furnished its prospective mortgagors. Notwithstanding Masingill's knowledge of the true state of the title, he named the Boltons as the owner of the full legal title and signed the form. From the agent's unrebutted testimony, we believe it is also clear that whether or not he considered himself a general agent, he was clothed with the authority to bind the company. [His testimony is not conclusive on this issue. Consolidated Underwriters Insurance Company v. Landers, 285 Ala. 677, 235 So.2d 818 (1970)]. As such, his knowledge of the facts received in the line and scope of his authority must be imputed to the company. [At oral argument before this Court, appellant, National Security, conceded that the knowledge of Mr. Masingill was to be imputed to the company.] American Life Ins. Co. v. Buntyn, 227 Ala. 32, 148 So. 617 (1933); Gunn v. Palatine Ins. Co., Limited, of London, England, 227 Ala. 245, 149 So. 672 (1933).

On these facts, Western Assurance Co. v. Stoddard, 88 Ala. 606, 7 So. 379 (1889), is dispositive of both contentions made by appellant. In that case the insured was only the life tenant of the insured property. The insurer defended a suit on the policy by alleging that the insured had represented herself to be the owner of the legal fee. The insured replied that the true facts were known to the agent who had negotiated the policy on behalf of the company. In rebuttal, the company argued that even if this was true, the insured could recover only the value of her life estate and not the full value of the property. This Court held, at pp. 611, 613, of 88 Ala., at pp. 379, 380, of 7 So.:

"The application for insurance was made through the husband of Mrs. Stoddard, and in said application are found the following questions, and answers thereto: 'Is there any interest in the property other than your own?' *Answer*: 'None other [than] my wife and self. * * * In litigation or dispute?' *A.* 'None.'

"In issuing the insurance policy, the insurance company was represented by Franklin, its agent. It is replied to the two lines of defense stated above that while the negotiation for insurance was pending, and before the policy was issued, Franklin, the agent, was notified of the true state of the title, and of the litigation, which, it is asserted, was in progress, and, as is claimed, assailed Mrs. Stoddard's title to the property.

"If it be true, as asserted, that Franklin, the agent, knew, or was notified, pending the negotiation, of the nature and extent of Mrs. Stoddard's ownership, and of the alleged litigation, this was constructive notice to the insurance company; and, receiving the premium and issuing the policy after such notice, the insurance company will not be heard to complain of the false representation,

or breach of warranty. To allow it to do so, would be to sanction bad faith on its part." [Citations omitted.]

\* \* \* \* \* \*

"The fourth and last defense relied on in this case is partial, and claims only a reduction in the amount of damages. The substance of it is that, inasmuch as Mrs. Stoddard had only a life-estate in the gin-house, she should not be allowed to recover the entire value, but only the value of her life-estate. The general rule certainly is that the owner of a qualified or partial interest in property can only insure to the extent of that interest; and, in case of loss or destruction of the property, his recovery must be limited to the value of his interest. [Citations omitted.]

"It will be borne in mind that one of the indispensable conditions of plaintiffs' right of recovery in this case is that the jury must be convinced from the testimony that Franklin, while he was negotiating the insurance, had knowledge or notice that Mrs. Stoddard's title was only a life-estate. *If, having such knowledge or notice, he placed the insurance as upon an absolute title, and he demanded and received the amount of premium which would be due and demandable for insurance of the entire ownership of the property, both reason and authority demand that the loss shall be compensated, as if the assured had held a title in fee.*" [Citations omitted.] [Emphasis supplied.]

In addition to the doctrines of waiver and estoppel, a similar doctrine also precludes the insurer from disclaiming liability. In Coastal States Life Insurance Company v. Leonard, 279 Ala. 171, 182 So.2d 913 (1966), this Court quoted with approval an earlier holding in Williamson v. New Orleans Insurance Ass'n., 84 Ala. 106, 4 So. 36, viz.:

" '* * * if the agent of the insured made true statements of the condition of

the title and ownership of the property to the agent of the defendant, at the time the application for insurance and the answers were made, and the agent of the defendant nevertheless wrote the answer as appears in the application, thus substituting an answer which was untrue, the answer is the statement of the agent, and not of the assured. In such case the defendant will not be permitted to take advantage of the wrongful act, or misconstruction, or mistake, of its own agent, and avoid the policy, the insured being without fault. * * *'"

The Court also quoted with approval 7 Couch on Insurance, 2d Ed., § 35:186:

*"Misrepresentation By Agent Inserted Without Inquiry or of His Own Knowledge.*

&ast; &ast; &ast; &ast; &ast; &ast;

"In other words, if an application for insurance is made out by an agent of the insurer, acting on his own knowledge, the insurer ratifies his acts by granting the policy, and, if he was mistaken in the representations which he makes in the application, the insurer cannot insist upon it as a defense to a recovery. So, it is said that the insurer is bound by a policy issued upon the strength of information obtained by its agent by personal examination or investigation, since the insured, if he has not participated therein, is not responsible for the mistakes or carelessness of the insurer's agent, * * *."

The evidence in this case, and the reasonable inferences flowing therefrom, seem sufficient to support a finding that the insurer's agent Masingill knew the Boltons were in the process of purchasing the house and did not have the "full legal title." Nevertheless, he filled out the application form himself, answering the question which inquired as to the legal title in the affirmative, thereby representing to the company that the Boltons did have full legal title.

This is more than sufficient to sustain a recovery upon principles of waiver and estoppel or innocent misrepresentation made by the insurer's agent without fault of the insured. As previously stated, these theories only require that the insureds act in good faith and have some sort of pecuniary interest in the insured property at the time of the loss. American Ins. Co. v. Newberry, supra. The mere fact that the insureds, after the occurrence of a loss, might elect to rescind the contract of sale cannot be said to inject the prohibited gambling element into the policy. National Security was bound by the representation of full legal title placed in the policy by its agent when it accepted the full premium and issued the policy. Having done so, it is estopped to assert any defense inconsistent with these representations.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

MERRILL, McCALL and JONES, JJ., and SIMMONS, Supernumerary Circuit Judge, concur. SIMMONS, Supernumerary Circuit Judge, assigned by the Chief Justice for temporary duty on the Supreme Court pursuant to authority contained in the provisions of Section 6.10 of the New Judicial Articles (Constitutional Amendment 328).