303 So.2d 113

**NATIONAL SECURITY FIRE AND CASUALTY CO.**

v.

**Jim NEWMAN.**

**Civ. 334.**

Court of Civil Appeals of Alabama.

Nov. 13, 1974.

Robert C. Barnett, Birmingham, for appellee.

Richard L. Taylor, Birmingham, for appellant.

BRADLEY, Judge.

This is an appeal from a verdict and judgment in favor of plaintiff in an action on a fire insurance policy.

Appellee-plaintiff filed a complaint in the Civil Court of Jefferson County, Alabama against appellant-defendant claiming $3,000 as damages for the value of a dwelling, covered by a policy of insurance, which was destroyed by fire on January 9, 1972. There was a judgment in favor of plaintiff for $3,000. Defendant insurance company appealed to the Circuit Court of Jefferson County.

Defendant filed pleas of the general issue and special pleas alleging that plaintiff

had wilfully concealed or misrepresented his true ownership in the property insured, i.e., he was a mere lessee rather than the owner of the full legal title to the property insured.

Trial resulted in a verdict and judgment for plaintiff in the amount of $2,204.80. A motion for a judgment notwithstanding the verdict, or, in the alternative, for a new trial, was overruled. The appeal is from the judgment on the merits.

The facts show that the plaintiff, Jim Newman, obtained a bill of sale from a Mrs. Nettie Weems for a dwelling house located at 1258 Pleasant Grove Road, Jefferson County, Alabama for the purchase price of $3,000. The land on which the dwelling was situated was owned by U. S. Steel Corporation. Subsequent to the sale of the dwelling to plaintiff, a request for the transfer of a written lease agreement on subject property from Mrs. Weems to plaintiff was submitted to U. S. Steel. Such a lease transfer was approved and thereafter a written lease agreement on the property in question was executed by plaintiff and U. S. Steel for a five year term with a consideration of $186.00 per year.

After entering into the lease agreement with U. S. Steel, plaintiff called Mr. David Bates, an insurance broker, on the telephone and requested that he obtain insurance on the dwelling located at 1258 Pleasant Grove Road, Jefferson County, Alabama. An insurance policy on the dwelling in question was issued by defendant for a face amount of $3,000.

Once the dwelling was insured, it was sublet, with approval of U. S. Steel, to Mr. Jack Meyers for $75 per month. Mr. Meyers rented the premises for about six months. Thereafter the property was rented to a Mrs. Holloway and her husband for $45 per month. However, plaintiff stated that the amount of the rental to the Holloways was also in consideration of the care they gave the horses plaintiff boarded on the premises. The Holloways were living in the house in question when it was destroyed by fire on January 9, 1972.

After the fire, plaintiff contacted Mr. Bates, and an adjuster representing defendant called on Mr. Newman, went with him to the scene of the fire, and obtained a statement from him.

Defendant-insurer contends first that the insurance policy which is sued on is void for that a material condition of the policy had been violated, and, second, that plaintiff had at most a leasehold interest in the premises insured and was therefore entitled only to the value of that interest and not the full value of said premises.

When the true ownership of the property to be insured is made a condition of the policy of insurance, such condition must be complied with or the policy is void. Brown v. Commercial Fire Ins. Co., 86 Ala. 189, 5 So. 500. In the cited case the provision in the policy sued on provided that it was to be void:

" . . . if the assured is not the sole and unconditional owner of the property, or if any building intended to be insured stands on ground not owned in fee-simple by the assured; or if the interest of the assured in the property, . . . is not truly stated in this policy."

The pleadings in the cited case showed that insured was not the unconditional owner, hence the condition of the policy was violated and the supreme court found that the policy was void for that reason.

The policy of insurance in the case at bar provided that:

"This entire policy shall be void if, . . . the insured has wilfully concealed or misrepresented . . . the interest of the insured therein, . . . . "

The application for insurance contained the following:

"6. Does applicant have full legal title. Yes. . . . "

The application for insurance was signed by David Bates and was accompanied to the insurer by a check for $49.70 drawn on the account of Bates Insurance Agency, Birmingham, Alabama.

The plaintiff, Mr. Newman, testified that he called Mr. Bates on the telephone and asked him to obtain insurance on the dwelling at 1258 Pleasant Grove Road and Mr. Bates testified that he filled out the application for the insurance based on information furnished by Mr. Newman over the telephone.

At the time the insurance was applied for, plaintiff had purchased the dwelling in question for $3,000 and had a bill of sale to evidence that fact. He had also entered into a lease agreement for the land which provided that any structure on the land at the time of the lease was to be considered a part of the realty.

The complaint sought $3,000 from defendant-insurer as damages for the loss by fire of the insured dwelling. The special pleas averred that defendant was not liable for that plaintiff had wilfully misrepresented or concealed his title to the property insured.

The question in the instant case is not whether insured is the "sole and unconditional owner of the property" as was the requirement in the cited case, but whether the plaintiff had wilfully concealed or misrepresented his rights in the property insured. This issue was raised by the pleadings and proof and presented to the jury for its decision, and rightfully so.

█ Whether or not plaintiff had wilfully concealed or misrepresented his interest in or title to the property insured was a factual issue to be resolved by the factfinder, i.e., the jury. The jury obviously resolved said issue in favor of the plaintiff.

The next question is whether the evidence was supportive of such a finding. The evidence shows that plaintiff was not asked by the insurance agent what interest he held in the property to be insured. Furthermore, there was proof that plaintiff had purchased the dwelling from Mrs. Weems for $3,000 and received a bill of sale. The jury could have concluded from this evidence that plaintiff did own the property he had insured or thought he owned it and that plaintiff had not "wilfully misrepresented or concealed" the fact that he legally owned only a limited or qualified interest in the property insured. We conclude that the evidence is supportive of the jury's finding in this regard.

The next issue concerns the extent, if any, of plaintiff's insurable interest in the property on which defendant issued its policy of insurance.

Defendant contends that plaintiff had only a leasehold interest in the premises insured and any recovery he might obtain would be limited to the value of that leasehold interest. In support of this contention defendant points out that the land on which the dwelling covered by the policy of insurance was situated was owned by U. S. Steel Corporation and leased to the plaintiff for a term of five years. Pertinent provisions of that lease are as follows:

"(2) Said lease shall begin on the 1st day of January, 1971, [and terminate the] 31st day of December, 1975, provided that said lease shall terminate at the end of any rental period upon failure of Lessee to pay rental in advance for the next rental period, or unless terminated sooner as hereinafter provided;

"(3) In consideration of said lease, Lessee shall pay the Lessor at Lessor's office in Fairfield, Alabama, rental at the rate of One Hundred Eighty-Six and No/100——Dollars ($186.00) per annum, payable as follows:

"On or before January 1st of each year.

. . . . . .

"(8) The Lessor, may terminate this lease at any time by giving to the Lessee

thirty days' notice in writing of the intention so to do; said notice may be served by leaving a copy with the Lessee personally or by leaving a copy of said notice upon the leased premises or at the usual place of abode of the Lessee;

.    .    .    .    .    .

"(13) The Lessee shall not transfer this lease nor sublet the land herein described, nor permit anyone to occupy or use said land or any structures thereupon, without the written consent of the Lessor;

(14) The Lessee shall during the continuance of this lease keep in repair all structures, fences and other improvements located upon the land described herein;

(15) The Lessee hereby agrees that all structures, fences and other improvements which are now on the land herein leased are a part of the leased premises, and the Lessee further agrees that all structures, fences and other improvements which may be erected on said land during the term of this lease shall become a part of the leased premises when so erected thereon, and shall not be damaged or removed from said land without the written consent of the Lessor;"

Plaintiff counters by saying that he readily concedes that the land on which the dwelling stands is owned by U. S. Steel and that he leased it from that corporation for a five year term. However he adamantly contends that he purchased the dwelling from Mrs. Weems at the direction of the lessor and is the present owner. An agent of the lessor orally testified that this was true and stated that U. S. Steel was not interested in the house but only in the land.

Defendant replies by saying that the written agreement between plaintiff and U. S. Steel shows clearly that the structure was on the property at the time of plaintiff's lease and by its terms was a part of the realty. Further, such provisions in the written agreement which prescribe the rights or interest of plaintiff in the property insured cannot be varied or contradicted by parol testimony. Defendant has reference here to the testimony of plaintiff and lessor's agent relating to plaintiff's purchase of the dwelling.

Usually when controversies over the meaning of a written agreement arise, it is between the parties to the instrument being controverted. In the instant case, the dispute is between parties to an insurance policy with the insurer insisting on the validity of the lease agreement between insured and a third party, and relying on its terms to the exclusion of the parol testimony showing to the contrary.

The supreme court in Ex parte St. Paul Fire & Marine Ins. Co., 236 Ala. 543, 184 So. 267, cited 10 R.C.L. 1021 for the following:

"Where one, although not a party to the instrument, bases his claim upon it, and seeks to render it effective in his favor as against the other party to the action, by enforcing a right originating in the relation established by it, or which is founded upon it, the parol evidence rule applies."

█ In the case at bar the insurer, although a third party so far as the lease agreement is concerned, is relying on the terms of the lease agreement to establish its defense to plaintiff's claim. The extent of its liability under the policy issued to plaintiff is circumscribed by the terms of the lease; hence the parol evidence rule would be applicable.

It is obvious from the evidence in this case that there is a conflict between the parol testimony and the written agreement as to the ownership of the premises insured by defendant.

█ The rule is well settled that where there is a written contract between parties, parol evidence will not be received to alter, vary or contradict its terms.

Hartford Fire Ins. Co. v. Shapiro, 270 Ala. 149, 117 So.2d 348. However, there are exceptions and one of those exceptions is to the effect that where there is an oral agreement, separate and apart from the written agreement, the parol evidence rule does not apply. Hartford Fire Ins. Co., *supra*. But, if the parties to the agreement negotiated before the agreement the very point contained in the written agreement, it must be assumed that the provision in the written agreement is the end result of the negotiations had beforehand. Wigmore on Evidence, 3rd Ed., Vol. 9, Sec. 2430, p. 97.

It is quite apparent from the evidence in the case at bar that the parties to the lease agreement discussed the ownership of the structure on the leased premises, e.g., the lessee stated that he purchased the structure at the direction of lessor and this was confirmed by lessor's agent, before the lease agreement was executed; and, the lease agreement clearly provides that any structures thereon at the end of the lease period become a part of the realty. The supreme court has declared that where the structure is considered a part of the realty, it is the property of the lessor, unless there is a provision in the lease agreement clearly stating that the structure is the property of the lessee. Powers v. Harris, 68 Ala. 409. There is no provision in the lease in controversy declaring that the structure is the property of lessee; in fact it provides, in effect, that it is the property of lessor.

In the case at bar the defendant did not object to certain oral testimony by plaintiff concerning the purchase of the dwelling from Mrs. Weems and the receipt of a bill of sale; nor was there objection to the testimony of the agent of U. S. Steel that the purchase was required of plaintiff before the lease agreement to the land would be approved; furthermore the evidence so adduced came in prior to the introduction into evidence of the written lease agreement. In this posture of the case, how does one raise the question of the parol evidence rule, if he can in fact raise it? The answer is found in Southern Guaranty Ins. Co. v. Rhodes, 46 Ala.App. 454, 243 So.2d 717 and Hartford Fire Ins. Co. v. Shapiro, *supra*. It is there stated that the problem can be solved by a motion to exclude, by a request for the affirmative charge, or by a motion for new trial.

In the instant case it was raised by the defendant's request for the following charge to be given to the jury:

"I charge you that under the evidence in this case the plaintiff owned only a leasehold interest in the dwelling under the lease between him and United States Steel Corporation."

The trial court refused to give the charge and defendant says such refusal requires a reversal of the case for a new trial. We agree. The motion for new trial was also erroneously refused for this reason.

Having concluded that the jury could consider that plaintiff had only a leasehold interest in the property insured, the next question that arises is whether plaintiff had an insurable interest in the property destroyed, and, if so, what would be the limits of that insurable interest, if any?

In American Equitable Assur. Co. v. Powderly Coal & L. Co., 225 Ala. 208, 142 So. 37, it was said:

" . . . [I]t is not now essential to an insurable interest that one should have a property in the thing insured, or an estate, legal or equitable; the term 'insurable interest' being more extensive than property or estate. Any qualified or limited interest in the subject of insurance is sufficient, and an equitable interest is sufficient to support an insurable interest. It has likewise been held that any reasonable expectation of legitimate profit or advantage to spring from property is sufficient to give an insurable interest. . . ."

In Western Assur. Co. v. Stoddard, 88 Ala. 606, 7 So. 379, it was decided that a

person had an insurable interest in a qualified or partial property interest, but that such insurable interest was limited by whatever property interest that was owned; further, that any recovery for loss of that interest would be limited by the extent of that property interest.

Title 28A, Section 317, Code of Alabama 1940, as Recompiled 1958, as amended, provides in part as follows:

> "(2) 'Insurable interest' as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment."

The supreme court in a recent case, National Security Fire and Casualty Co. v. Hester, 292 Ala. 592, 298 So.2d 236, commented on the above quoted section of Title 28A to the effect that even though the Alabama courts had not construed this particular section of our insurance law, it was merely declaratory of the long-standing Alabama rule governing insurable interest.

■ The insured having only a leasehold interest in the premises insured was limited in his recovery for the loss of the insured property to the value of that interest. Western Assur. Co. v. Stoddard, *supra*.

■ What then is the measure of damages for the loss of a leasehold interest such as is involved in the present case? It has been considered by one jurisdiction to be the difference between the reasonable rental value of the property and the rental cost for the remainder of the term. Getchell v. Mercantile & Mfg's Fire Ins. Co., 109 Me. 274, 83 A. 801.

We do not consider such a formula for measuring the damages due to a fire loss to be unreasonable. Especially is this so when one remembers that a policy of fire insurance merely indemnifies one against actual loss. Imperial Elevator Co. v. Ben-

nett, 127 Minn. 256, 149 N.W. 372. See also Title 28A, Section 317(3), Code of Alabama 1940, as Recompiled 1958, as amended, which is as follows:

> "(3) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof."

Defendant-insurer also contends that the trial court erred in refusing to give the following instruction to the jury on the question of interest:

> "I charge you that you cannot award plaintiff any interest on any award of damages."

The defendant also argues that the court's oral charge to the jury was erroneous for it did not state that the interest commenced to run sixty days after date of loss as provided by the terms of the policy, and cited Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 130 So. 180.

The cited case provided that interest commenced to run sixty days after due notice and satisfactory proof of loss had been received by the company.

In the case at bar the trial judge charged that interest would commence to run from the date the jury is reasonably satisfied from the evidence that plaintiff had complied with all the provisions of the policy with reference to the assertion of the claim. The policy was in evidence.

■ We conclude that the trial court rightfully left with the jury the burden of deciding when the interest period commenced to run after consulting the applicable provisions of the insurance policy. We find no error in the trial court's refusal to give requested charge number four.

For the errors mentioned above, this case is reversed and remanded for a new trial.

Reversed and remanded.

WRIGHT, P. J., and HOLMES, J., concur.