ROBERTSON, Presiding Judge.
Missouri Middleton appeals from a summary judgment entered by the Lowndes County Circuit Court awarding Othellá Rush $30,000 in interpleaded fire-insurance proceeds payable as a result of the burning of a residence on property owned by Middleton, but occupied by Rush. We reverse and remand.
Middleton sued Alfa Insurance Corporation (“Alfa”) in March 1998, claiming that Alfa had issued a policy of fire insurance to Rush in August 1996 insuring property owned by Middleton, that the property had suffered a total fire loss in May 1997, and that Alfa had a duty to pay her the proceeds of that insurance. In response, Alfa admitted that it had issued Rush a policy of fire insurance and asserted an inter-pleader claim in the trial court against Middleton and Rush; it also paid into court $80,000, representing the proceeds of the fire policy, and requested that Rush and Middleton be required to present their claims to the trial court and that it be discharged from further liability. Rush answered Alfa’s claim and asserted a counterclaim to the insurance proceeds, alleging that Middleton would be unjustly enriched if the proceeds of the policy were paid to her. Rush later amended her counterclaim to assert another claim alleging that she, rather than Middleton, was the actual equitable titleholder of the property and that Middleton owed Rush proceeds that Middleton had allegedly received as a result of a sale of the property.
Middleton and Rush filed summary-judgment motions with respect to their competing claims to the fire-insurance proceeds. After a hearing, the trial court entered on April 7, 1999, an order denying Middleton’s summary-judgment motion; however, the court granted Rush’s summary-judgment motion and awarded Rush the interpleaded $30,000. The tidal court later dismissed Alfa as a party by stipulation.
Middleton appealed from the April 7, 1999, summary judgment in favor of Rush concerning the fire-insurance proceeds. Because Rush’s claim for proceeds of the sale of the property had not been adjudicated, however, that summary judgment was not final, but interlocutory (see Rule 54(b), Ala.R.Civ.P.), and this court remanded the case for entry of an order, pursuant to Brown v. Whitaker Contracting Corp., 681 So.2d 226 (Ala.Civ.App.1996), that would render the interlocutory summary judgment final and immediately appealable. On Rush’s motion, the trial court entered an order dismissing the unadjudicated claim, rendering the earlier summary judgment final. See Sanders v. Burgard, 715 So.2d 808, 809 (Ala.Civ.App.1998) (remand pursuant to Brown resulted in final judgment as to all claims).
This court’s standard of review, as set forth by the Supreme Court, is as follows:
“ Tn reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact’ and whether the movant was entitled to a judgment as a matter of law. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
Ex parte General Motors Corp., [Ms. 1971318, Sept. 24, 1999] — So.2d —, —(Ala.1999) (citations and internal quotation marks omitted).
Viewed in a light most favorable to Middleton, the non-movant (see Ex parte General Motors, — So.2d at —), the record reveals the following facts. In 1971, a •parcel of real property in Lowndes County was conveyed to Middleton and her husband as joint tenants with right of surviv- *1278 orship. • After that conveyance was recorded, Middleton and her husband separated, and Rush began living with Middleton’s husband on the subject property. Middleton’s husband died in 1996, and sole title to the property thereafter vested in Middleton. However, Middleton’s husband’s will had devised any interest he may have had in the property to Rush, and Rush was able to secure fire-insurance coverage on the property from Alfa after presenting an insurance agent in Selma with copies of the death certificate and the will of Middleton’s husband. Rush paid the insurance premiums on the property.
Approximately one month after Middleton’s husband had died, according to an affidavit given by Rush’s sister, Middleton and her daughter placed signs on the property indicating that it was for sale and listing Middleton’s telephone number. However, according to affidavits given by Middleton and her daughter, Middleton reluctantly agreed to permit Rush to continue living on Middleton’s property, and pursuant to Middleton’s instructions, Middleton’s daughter informed Rush that she was to pay all applicable taxes and insurance premiums with respect to the property. In her affidavit, Rush denied having spoken with Middleton or her daughter at any time after the death of Middleton’s husband, and she specifically denied having had a discussion with Middleton’s daughter about any conditions that would allow her to remain on the property.
On May 20, 1997, a fire oh the property destroyed the residence thereupon. In response to a request for a production of documents for “[a]ny statements given by family members of [Middleton] or [Rush],” Middleton produced a transcript of an interview of Rush’s niece taken by an Alfa employee indicating that a few days before the fire took place, Rush’s niece had heard Rush state that she planned to set the residence on fire because Middleton was planning to evict her (Rush) from the property, and to collect the insurance proceeds thereon.
One of the two issues raised by Middleton on appeal is whether she, Middleton, had an “insurable interest” with respect to the property. No contract of property insurance is enforceable except for the benefit of persons having an insurable interest in the things insured as. of the time of the loss. Section 27-14-4(a), Ala.Code 1975. Under Alabama law, an “insurable interest” is “any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment.” Section 27-14-4(b), Ala.Code 1975; see also National Sec. Fire & Cas. Co. v. Newman, 53 Ala. App. 614, 620, 303 So.2d 113, 118 (Civ.App.1974) (noting that that statute is “declaratory of the long-standing Alabama' rule • governing insurable interest”). “The reason advanced for the rule prohibiting one from insuring for his benefit the property of another is that if he has no interest in the property there would be a temptation to destroy it and he would be helped and not injured thereby.” National Sec. Fire & Cas. Co. v. Minchew, 372 So.2d 327, 329 (Ala.1979).
We agree with Middleton that fee-simple title to property'would constitute an “insurable interest” — “any qualified or limited interest in the subject of insurance” is sufficient. Newman, 53 Ala.App. at 619, 303 So.2d at 118. However, because it was Rush, not Middleton, who procured the insurance, the pertinent question is whether Rush, who occupied the position of a tenant at will[1] on the subject property, had an insurable interest. The authorities answer that question in the affirmative. Newman holds that a leaseholder-insured has an interest in the leased premises “limited ... to the value of that interest,” id. at 620, 303 So.2d at *1279 118, and although Alabama precedents have not specifically applied that principle to a tenant at will, we have found no holdings to the contrary. See also 44 C.J.S. Insurance § 230 (1993) (tenant at will has insurable interest if the loss of the leased structures may cause pecuniary injury); Yoshida v. Security Ins. Co., 145 Or. 325, 26 P.2d 1082 (1933) (lessees holding month-to-month tenancy, a subspecies of tenancy at will, held insurable interest in property); but see Fidelity Phenix Fire Ins. Co. of New York v. Raper, 242 Ala.440, 6 So.2d 513 (1941) (tenant at sufferance held no insurable interest).
Because Rush held an insurable interest in the subject property, the question arises whether she, as a lessee, is entitled to the proceeds of an insurance policy that she procured on the property. In that regard, the rule is: “In the absence of any agreement to the contrary, the proceeds of insurance obtained by either the lessor or the lessee ... cannot be claimed, in whole or in part, by the other, even though the policy covers the value of the interests of both in the property.” 5 Lee R. Russ and Thomas F. Segalla, Couch on Insurance § 68:35 (3d ed. 1995 & 1999 Supp.); see also Yoshida, 145 Or. at 336, 26 P.2d at 1086 (one with insurable interest may keep proceeds of fire insurance even though someone else holding an insurable interest is compelled to sustain a heavy loss). Alabama law is in accord with this general principle:
“The general rule in this state is: In the absence of a provision in the instrument that creates the estate, or an agreement to like effect made between the parties, there is no duty upon any of the parties to insure for the benefit of a cotenant. Any insurance taken out by one cotenant, i.e. one with an ‘insurable interest’ in the property, who pays the insurance premiums with their own funds, is a ‘personal indemnity’ to that (insured) cotenant unless otherwise agreed or intended.”
Gardner v. Roberts, 565 So.2d 638, 640 (Ala.Civ.App.1990) (citing cases).
In Gardner, this court considered a situation wherein two married persons had owned a parcel of land, but where the husband’s mother had moved onto the land with the husband’s permission after the owners had become estranged; the mother then obtained fire insurance covering the property. In that case, there was no documentary evidence or testimony that the mother had agreed to insure the dwelling on the property. After noting that “[wjhether the proceeds from an insurance policy taken out by one cotenant as the sole owner for its full value, who has paid the premiums thereon ... will inure to the benefit of all cotenants turns on the equities of the case,” we held that the permissive lessee (the mother), rather than the owner (the husband), was entitled to fire-insurance proceeds paid after the dwelling on the property had burned. 565 So.2d at 640.
Rush relies heavily on the general rule stated in Gardner, and the trial court cited that case in entering its summary judgment. However, this case differs from Gardner in one crucial respect: here, the lessor has presented substantial evidence that before the fire took place her daughter had expressly informed the tenant concerning the terms of the tenant’s remaining on the property, and that one of those terms was the tenant’s maintaining insurance on the property. The trier of fact could conclude, from the affidavits of Middleton and her daughter, that Middleton reluctantly agreed to allow Rush to remain on the subject property and that Rush’s tenancy was expressly dependent upon her keeping insurance in force on the property. Moreover, under the “equities of this case,” the trier of fact may well conclude after a trial that the fire-insurance proceeds should be paid to Middleton, who undisputedly had nothing to do with the occurrence of the fire, rather than Rush, as to whose blamelessness the rec *1280 ord is not as clear.[2] Therefore, we conclude that the trial court erred in entering the summary judgment in favor of Rush.
Based upon the foregoing facts and authorities, the summary judgment awarding Rush the $30,000 fire-insurance proceeds is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.

. Under Alabama law, Rush was a tenant at will by implication because she had Middleton’s permission to remain on the property, although Rush paid no rent. See Riley v. Riley, 257 Ala. 636, 639, 60 So.2d 432, 434 (1952).

. We note that while, in the absence of an express covenant, a tenant is not bound to repair or restore buildings that are destroyed by an act of God or an unavoidable accident (Warren v. Wagner, 75 Ala. 188 (1883)), the tenant will be liable to the landlord if the buildings are destroyed through the tenant's wrongful act or negligence (49 Am.Jur.2d Landlord & Tenant § 842 (1995)).